## COMMONWEALTH *vs.* ORLANDO IGLESIA, JR.

Worcester.  May 2, 1988. — August 1, 1988.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Firearms. Necessity. Practice, Criminal*, Instructions to jury.

At the trial of an indictment alleging the unlawful carrying of a firearm, the evidence was sufficient to raise the issue of necessity as a defense. [134]

At the trial of an indictment alleging the unlawful carrying of a firearm, there was no error in the judge's instructions with regard to the defense of necessity and the Commonwealth's burden of proving absence of necessity beyond a reasonable doubt. [135-136]

INDICTMENT found and returned in the Superior Court Department on November 9, 1985.

The case was tried before *James P. Donohue*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Michael R. Schneider*, Committee for Public Counsel Services, for the defendant.

*Katherine E. McMahon*, Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. The defendant was charged with assault and battery by means of a dangerous weapon, a beer bottle, on Michael Moreno, assault and battery by means of a dangerous weapon, a handgun, on Michael Guzman, assault with intent to kill Guzman, and unlawfully carrying a firearm. A jury acquitted the defendant of the first three charges and convicted him of unlawfully carrying a firearm. On appeal, which we transferred to this court on our own motion, the defendant argues that, in his instructions to the jury, the trial judge erroneously reduced the Commonwealth's burden of proof on the issue of necessity to a mere preponderance of the evidence. We affirm the judgment.

The several charges grew out of a series of incidents in Worcester on the night of September 12, and the early morning of September 13, 1985. The Commonwealth's evidence was that the defendant and Michael Moreno got involved in an altercation in the A.K. Lounge in Worcester, during which the defendant struck Moreno over the head with a beer bottle. After both men were ejected from the lounge, the fight continued in the street, where Moreno's brother Richard intervened to help him. The police then arrived, and Michael Moreno was transported by ambulance to Worcester City Hospital. At the hospital, Richard informed Michael that the defendant was armed and looking for him.

The Morenos' friend, Michael Guzman, then drove Michael Moreno to the V.I.P. Lounge, next to the A.K. Lounge, where they rejoined Richard. As the three men were leaving the establishment, the defendant walked in carrying a gun, and fired a shot at Michael Moreno. Guzman jumped on the defendant and a struggle ensued, during which Guzman was unable to wrest the gun from the defendant. Shots were fired, one of which struck Guzman in the side. As Guzman crawled away from the defendant, the defendant shot at him again and missed. The defendant then left the bar.

The defendant's version was quite different. He testified that he was playing cards that evening with Michael Moreno in the A.K. Lounge. After the defendant noticed Michael cheating for the second time, a group of people attacked the defendant. The attack continued outside the bar, and the assailants dispersed only when the police arrived. The defendant crawled to his car, and stayed there for one-half hour. Because his vision was obscured by blood, the defendant parked his car in front of the nearby V.I.P. Lounge, and went in to wash his face.

As he entered, he was jumped by Guzman, who had a gun. The defendant and Guzman struggled over the gun, and several shots went off, one of which struck Guzman. The defendant wrested the gun from Guzman, and went "immediately" and "directly" to the Worcester police station and turned in the gun.

Sergeant John Leszczynski of the Worcester police department testified that the defendant, who was covered with blood,

walked into the Worcester police station at 1:35 A.M., on September 13, 1985, and placed a gun on the counter. When asked if the gun was his, the defendant twice replied, "No."

In *Commonwealth* v. *Thurber*, 383 Mass. 328, 330 (1981), we noted that Model Penal Code § 3.02 (Proposed Official Draft 1962) defines necessity "in terms of a balancing of harms where the criminal conduct represents the better choice." In *Commonwealth* v. *Brugmann*, 13 Mass. App. Ct. 373, 376-377 (1982), the Appeals Court stated: "In essence, the 'competing harms' defense exonerates one who commits a crime under the 'pressure of circumstances' if the harm that would have resulted from compliance with the law significantly exceeds the harm actually resulting from the defendant's violation of the law. At its root is an appreciation that there may be circumstances where the value protected by the law is, as a matter of public policy, eclipsed by a superseding value which makes it inappropriate and unjust to apply the usual criminal rule. See generally LaFave & Scott, Criminal Law § 50 (1972); Arnolds & Garland, The Defense of Necessity in Criminal Law: The Right to Choose the Lesser Evil, 65 J. Crim. L. & Criminology 289, 291-296 (1974)" (footnote omitted). See *Commonwealth* v. *Hood*, 389 Mass. 581, 590 (1983), quoting *Brugmann, supra,* with approval.

In *Commonwealth* v. *Lindsey*, 396 Mass. 840, 845 (1986), this court assumed, without deciding, that "unlicensed temporary possession of a firearm in a public place might be lawful in spite of G. L. c. 269, § 10 (*a*), in certain necessitous circumstances." Similarly, we assume today that, when "a defendant seizes a firearm from one who had expressed an immediate intention to use it, and flees to a place of safe-keeping," *Commonwealth* v. *Weaver*, 400 Mass. 612, 615 (1987), such possession might be lawful. Furthermore, the evidence in this case was sufficient to raise the necessity issue, and therefore, as in other matters of justification, mitigation, and excuse, the burden is on the Commonwealth to prove beyond a reasonable doubt the absence of necessity. *Commonwealth* v. *Thurber, supra* at 331.

In this case, after defining the elements of the crime of unlawfully carrying a firearm, the judge instructed the jury on necessity as follows: "Now very recently our Supreme Judicial Court has stated that the unlicensed temporary possession of a firearm in a public place might be lawful in certain necessitous circumstances . . . . Necessity is defined in terms of a balancing of harms where the criminal conduct represents the better choice. Now the rule of necessity allows a defendant to take from an assailant a firearm if the threat to that defendant is immediate, substantial and unavoidable and arises in circumstances in which action and self-defense are warranted. In other words, if a defendant was threatened by an assailant with a weapon and then the defendant seized that weapon from the assailant then the possession of that firearm in the midst of such an emergency by a defendant, that is not unlawful. Clearly, the taking of a firearm from an assailant during a struggle would not constitute an unlawful carrying or possession. . . . However, what is the law after the struggle is over? What about that period of time that exists after the struggle and until that gun is surrendered, if it was surrendered, later on?

"Remember — And I don't mean to suggest what the evidence is, it's for you to say — but there was some testimony in this case that some time after the shooting, if the shooting occurred, that this defendant brought that particular gun to the Worcester police station, so what you have to do is you must balance the particular harms. What would the better course of conduct for the defendant have been to follow? What would it have been better for him to have done? Should he have dropped the weapon and left or waited for the police? Should he have discarded the weapon somewhere? Bear in mind this, that if he had disposed of a gun or left it at the scene some other person may have acquired it. Some other person or even a child could end up with it. It is for you to say what actually happened, and it's for you to say whether based upon the circumstances that were developed during the trial — whether the conduct of this defendant, if this is what he did, in carrying this weapon to the police station represented the better choice. In this regard, the Commonwealth bears the burden of proving

beyond a reasonable doubt that the defendant did not act out of necessity when he acquired possession of this weapon and when he carried it to the police station, so that's entirely up to you." The judge then defined proof beyond a reasonable doubt.

The judge did not misstate the applicable standard of proof. First, he discussed the law of necessity from a substantive point of view. He correctly instructed the jury with regard to the matters they should consider in determining whether "in terms of a balancing of harms," the defendant's conduct represented "the better choice." See *Commonwealth* v. *Thurber*, *supra* at 330. That portion of the judge's instruction only identified the factual issues bearing on necessity. It was entirely neutral with respect to which party had the burden of proof on the issues, and as to the required quantum of proof. Then, having fully instructed the jury on the relevant factors for them to consider, the judge turned to the quite different matter of burden of proof, and he correctly charged that the Commonwealth had the burden to prove the absence of necessity beyond a reasonable doubt. The instructions were correct.

*Judgment affirmed.*