582 So.2d 676 (1991)
Kenneth L. JENKS and Barbara J. Jenks, Appellants,
v.
STATE of Florida, Appellee.
No. 90-2462.
District Court of Appeal of Florida, First District.
June 13, 1991.
*677 John F. Daniel, of Daniel & Komarek, Chartered, Panama City, for appellants.
Robert A. Butterworth, Atty. Gen., and Gypsy Bailey, Asst. Atty. Gen., Tallahassee, for appellee.

ON MOTION FOR REHEARING
ERVIN, Judge.
We substitute the following opinion for Jenks v. State, 16 F.L.W. D1070, 1991 WL 61786 (Fla. 1st DCA Apr. 16, 1991).
Kenneth and Barbara Jenks appeal their convictions for cultivation of marijuana and possession of drug paraphernalia, contending that the trial court erred in refusing to recognize their defense of medical necessity. We agree and reverse.
Kenneth Jenks inherited hemophilia from his mother, and contracted the acquired immune deficiency syndrome (AIDS) virus from a blood transfusion in 1980. He unknowingly passed it to his wife, Barbara Jenks. Mrs. Jenks' health began to decline rapidly. Her weight dropped from 150 to 112 pounds during a three week period as a result of constant vomiting, and she was hospitalized at least six times for two to three weeks at a time. Although she had been prescribed over a half-dozen oral medications for nausea, none of them worked. When given shots for nausea, she was left in a stupor and unable to function. Likewise, when Mr. Jenks started AZT treatment, he was not able to eat because the medication left him constantly nauseous. He also lost weight, although not as dramatically as his wife.
When the Jenks began participating in a support group sponsored by the Bay County Health Department, a group member told them how marijuana had helped him. Although initially reluctant, Mr. and Mrs. Jenks tried marijuana and found that they were able to retain their AIDS medications, eat, gain weight, maintain their health, and stay out of the hospital. They asked their treating physician about prescribing the drug, but were unable to obtain a legal prescription. The Jenks decided to grow two marijuana plants to insure its availability, avoid the expense of buying it on the street, and reduce the possibility of arrest.
On March 29, 1990, the Jenks were arrested and charged with manufacturing (cultivating) cannabis, pursuant to Section 893.13, Florida Statutes (1989), and possession of drug paraphernalia, a violation of Section 893.147, Florida Statutes (1989). The Jenks admitted to cultivating the marijuana and advised officers at the scene that they each had AIDS and used the marijuana to relieve their symptoms.
The Jenks waived their right to a jury trial and agreed that the bench trial should center on their defense of medical necessity. Because their physician, Thomas Sunnenberg, was not available to testify, the parties stipulated that Dr. Sunnenberg's testimony would be, in part:
Defense witness, THOMAS D. SUNNENBERG, M.D.... will testify as follows:
* * * * * *
8. That he has been unable to find any effective drug for treating the defendants' nausea.

*678 9. That the nausea is so debilitating that if it is not controlled, the defendants could die.
10. That if he could legally prescribe Cannabis Sativa as a drug to control their nausea he would.
11. That the only drug that controls their nausea is Cannabis Sativa.
12. That he is presently seeking access to legal Cannabis Sativa through the Food and Drug Administration under the Compassionate Investigational New Drug Program (IND) for the Jenks.
At trial, the defense also presented two expert witnesses, Robert Randall, who suffers from glaucoma and who successfully asserted the defense of medical necessity against a charge of marijuana cultivation in 1976,[1] and Dr. Daniel Dansak of Alabama, who has treated over fifty patients who have used marijuana to alleviate both disease symptoms and side-effects of medication.
The trial judge rejected the defense of medical necessity, found the Jenks guilty of manufacturing marijuana, and withheld adjudication of guilt, placing the Jenks on one year of unsupervised probation. He ordered the Jenks to perform 500 hours of community service, to be discharged only by "providing care, comfort and concern for each other."
The necessity defense has been formulated as follows:
The pressure of natural physical forces sometimes confronts a person in an emergency with a choice of two evils: either he may violate the literal terms of the criminal law and thus produce a harmful result, or he may comply with those terms and thus produce a greater or equal or lesser amount of harm. For reasons of social policy, if the harm which will result from compliance with the law is greater than that which will result from violation of it, he is by virtue of the defense of necessity justified in violating it.
W.R. LaFave & A.W. Scott, Jr., 1 Substantive Criminal Law § 5.4, at 627 (1986) (hereinafter LaFave & Scott). Or, as stated by Justice Holmes, "`Detached reflection cannot be expected in the presence of an uplifted knife.'" Arnolds & Garland, The Defense of Necessity in Criminal Law: The Right to Choose the Lesser Evil, 65 J.Crim.L. & Criminology 289, 290 (1974) (hereinafter Arnolds & Garland) (quoting Brown v. United States, 256 U.S. 335, 41 S.Ct. 501, 65 L.Ed. 961 (1921)).
Although there is no specific legislative acceptance of the necessity defense in Florida, we conclude that the defense was recognized at common law and that there has been no clearly expressed legislative rejection of such defense. The necessity defense was articulated as early as 1551 in Reninger v. Fagossa, 1 Plowd. 1, 19, 75 Eng.Rep. 1, 29-30 (1551): "[W]here the words of [the law] are broken to avoid greater inconvenience, or through necessity, or by compulsion," the law has not been broken. Arnolds & Garland, at 291. The authors state that the defense is poorly developed in Anglo-American jurisprudence because there are so few cases dealing with it, "probably because these cases are not often prosecuted." In any event, they indicate that although there is some disagreement on this, "it seems clear that necessity was a defense at common law." Arnolds & Garland, at 290. The authors cite a number of pre-1776 cases involving the necessity defense. Arnolds & Garland, at 291 n. 29.[2]
Consequently, we consider that Florida has adopted the necessity defense pursuant to Section 2.01, Florida Statutes (1989), which provides:
The common and statute laws of England which are of a general and not a local nature ... are declared to be of force in this state; provided, the said statutes and common law be not inconsistent with the Constitution and laws of the United States and the acts of the Legislature of this state.
*679 The medical-necessity defense is merely a more particular application of the necessity defense. See, e.g., LaFave & Scott at § 5.4(c)7, at 631-33; C.E. Torcia, 1 Wharton's Criminal Law § 88 (1978); 22 C.J.S. Criminal Law § 50 (1989). In fact, in Bavero v. State, 347 So.2d 781 (Fla. 1st DCA 1977), this court recognized the defense of medical necessity there asserted by a prison escapee. Accord State v. Alcantaro, 407 So.2d 922, 924 (Fla. 1st DCA 1981) ("Medical necessity was recognized as an arguable defense by this court in Bavero v. State[.]"), review denied, 413 So.2d 875 (Fla. 1982).
Although the state conceded at oral argument that the necessity defense exists in Florida's common law, the state nevertheless contends that Section 893.03, Florida Statutes (1989), is inconsistent with and therefore precludes the defense in the case at bar. We disagree. Section 893.03(1) provides:
SCHEDULE I.  A substance in Schedule I has a high potential for abuse and has no currently accepted medical use in treatment in the United States and in its use under medical supervision does not meet accepted safety standards except for such uses provided for in s. 402.36. The following substances are controlled in Schedule I:
* * * * * *
(c)4. Cannabis.
(Footnote omitted.) However, subsection (1)(d) provides,
Notwithstanding the aforementioned fact that Schedule I substances have no currently accepted medical use, the Legislature recognizes that certain substances are currently accepted for certain limited medical uses in treatment in the United States but have a high potential for abuse.
The state argues that section 893.03 permits no medical uses of marijuana whatsoever. In fact, all that subsection (1) states is that marijuana is not generally available for medical use. Subsection (1)(d), however, clearly indicates that Schedule I substances may be subject to limited medical uses. It is well-established that a statute should not be construed as abrogating the common law unless it speaks unequivocally, and should not be interpreted to displace common law more than is necessary. Carlile v. Game & Fresh Water Fish Comm'n, 354 So.2d 362, 364 (Fla. 1977) (quoting 30 Fla.Jur. Statutes § 130 (rev. ed. 1974); State v. Egan, 287 So.2d 1, 6-7 (Fla. 1973); Sullivan v. Leatherman, 48 So.2d 836, 838 (Fla. 1950) (en banc). We conclude that section 893.03 does not preclude the defense of medical necessity under the particular facts of this case.
Moreover, we conclude that the Jenks met their burden of establishing this defense at trial. The elements of the defense have previously been addressed by trial courts in United States v. Randall, 104 Daily Wash.L.Rep. 2249 (Super.Ct.D.C. Nov. 24, 1976), and in Florida in State v. Mussika, 14 F.L.W. 1 (Fla. 17th Cir.Ct. Dec. 28, 1988), which both involved the medically necessary use of marijuana by people with glaucoma. Those elements are as follows: 1. That the defendant did not intentionally bring about the circumstance which precipitated the unlawful act; 2. That the defendant could not accomplish the same objective using a less offensive alternative available to the defendant; and 3. That the evil sought to be avoided was more heinous than the unlawful act perpetrated to avoid it.
As applied to the case at bar, the Jenks obviously did not intend to contract AIDS. Furthermore, the Jenks' medical expert and physician testified that no drug or treatment is available that would effectively eliminate or diminish the Jenks' nausea.[3] Finally, the Jenks established that if their nausea was not controlled, their lives were *680 in danger.[4] The state put on no evidence that contradicted the Jenks, and the trial court had no authority to reject the witnesses' testimony. Based upon these facts, we conclude the trial court erred in rejecting the Jenks' defense and in convicting them as charged.
REVERSED with directions that judgment of acquittal be entered.
ZEHMER, J., concurs.
NIMMONS, J., dissents without written opinion.
NOTES
[1] United States v. Randall, 104 Daily Wash.L. Rep. 2249 (Super.Ct.D.C. Nov. 24, 1976).
[2] Other pre-1776 cases are cited in Note, "Necessity: The Right to Present a Recognized Defense," 21 N.Eng.L.Rev. 779, 781-83 (1985-86).
[3] Dr. Sunnenberg testified by stipulation that "he has been unable to find any effective drug for treating the defendants' nausea," and that "the only drug that controls their nausea is Cannabis Sativa." Dr. Dansak testified that there is a drug, Raglan, that is "a little more effective than marijuana," but that it must be given intravenously in "fairly whopping doses," thus creating problems with infections, particularly in AIDS patients.
[4] The Jenks described their constant vomiting and weight loss at the hearing. Dr. Sunnenberg stated in his stipulated testimony that his patients' "nausea is so debilitating that if it is not controlled, the defendants could die."