COMMONWEALTH *vs.* JOSEPH T. HUTCHINS.

Essex. February 7, 1991. - July 24, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Controlled Substances. Necessity.*

Discussion of the common law defense of justification by necessity. [729-732]

A criminal defendant's proffered evidence did not, in the circumstances presented, raise the defense of justification by necessity on charges of cultivation and possession of marihuana. [732] LIACOS, C.J., with whom NOLAN, J., joined, dissenting.

COMPLAINTS received and sworn to in the Newburyport Division of the District Court Department on October 30, 1984.

On appeal to the jury session of the Haverhill Division, the defendant waived a trial by jury and the cases were heard by *William H. Sullivan*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Michael G. Michaelson* of the District of Columbia (*Douglas M. Gleason* of the District of Columbia, & *Thomas G. Shapiro* with him) for the defendant.

*Margaret J. Perry*, Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. The defendant was convicted of drug offenses at a bench trial in the District Court. He requested a jury trial de novo. Thus, any errors that may have occurred during the bench trial are without consequence. *Foley* v. *Lowell Div. of the Dist. Court Dep't*, 398 Mass. 800, 803 (1986). In a jury session of the District Court, the charges were first amended to charges of cultivation of THC (a chemical found in marihuana) and of marihuana, and of pos-

session of both substances with intent to distribute. Subsequently, the charges were reduced to simple possession or cultivation of THC and marihuana, and the defendant waived trial by jury.

Before trial, the defendant filed a motion to dismiss the complaints "on the ground that any possession of controlled substances by the [d]efendant is within the [d]efense of [m]edical [n]ecessity." The motion states that counsel "wishes to present a clear record for the reviewing court," and therefore requests the court to "state that it is denying the [d]efendant the right to assert a defense of medical necessity as a matter of law." This, the motion states, would "prevent the [d]efendant from having to call witnesses, many of whom [would be] paid medical experts, from Boston and Washington D.C. in an idle ceremony where such witnesses will not be allowed to testify." After a hearing, a judge complied, and endorsed the motion, "10/24/85 Motion denied. Def[endant] will not be allowed to introduce [evidence] re defense of medical necessity." Following a bench trial, the defendant was convicted of both reduced charges, and appealed. The defendant's sentences were stayed pending appeal. Due to missing transcripts and exhibits, there was a delay of over four years in docketing the case in the Appeals Court. Ultimately, the appeal was docketed, and we transferred the case to this court on our own initiative. We now affirm the convictions.

In support of his motion, as an offer of proof, the defendant submitted affidavits, excerpts from his medical records, literature on a disease known as progressive systemic sclerosis (scleroderma) and on the medicinal uses of marihuana and other materials. Through these materials, the defendant offered to prove the following facts: The defendant is a forty-seven year old man who has been diagnosed as having scleroderma accompanied by Raynaud's phenomenon, related to his service in the Navy. Scleroderma is a chronic disease that results in the buildup of scar tissue throughout the body. The cause of scleroderma is not known and no effective treatment or cure has been discovered. In the most severe cases, sclero-

derma may result in death. The defendant's medical history includes episodes of fatigue, hypertension, loss of appetite, weight loss of up to twenty-five pounds, diarrhea, nausea, vomiting, reflux of food and stomach acid into the mouth, reduced motility and constriction of the esophagus, extreme difficulty and pain in swallowing, and swollen, painful joints and extreme sensitivity to the cold in his hands and feet. He also suffers from severe depression, related at least in part to his disease, and was briefly hospitalized after attempting suicide. As a result of his illness, the defendant has been unable to work since 1978.

According to the offer of proof, the defendant's medical condition has been unsuccessfully treated with numerous medications and therapies by physicians of the Veterans Administration. The constriction of his esophagus has been treated by dilation and in 1974 was so severe that his treating physician advised him to have his esophagus surgically removed and replaced with a piece of his own intestine. The defendant has informed his treating physicians that since 1975, with some success, he has used marihuana, in lieu of antidepressants and surgery, to alleviate certain symptoms of his illness including nausea, loss of appetite, difficulty in eating, drinking or swallowing, loss of motility of the esophagus, spasticity, hypertension, and anxiety. Two of his treating physicians state that, although they are unable to "confirm [the defendant's] claim that his use of mari[h]uana has caused his remarkable remission, . . . it does appear that his use of mari[h]uana does alleviate the previously mentioned symptoms." These two physicians also state that "there appears to be a sufficient basis to conduct a scientific and medical investigation into the possible use of mari[h]uana to treat the disease of scleroderma." A research study of its therapeutic potential and medical uses indicates that the use of marihuana, indeed, may be effective to treat loss of appetite, nausea, vomiting, and weight loss and may relieve severe anxiety and depression. One of the defendant's other treating physicians, however, does not find that marihuana "had any effect in [the defendant's] case" and that he is "unaware of

any published or unpublished evidence of [a] beneficial effect of mari[h]uana in this condition." Through correspondence with his physicians, the Veterans Administration, and members of the Massachusetts Legislature and the United States Congress, the defendant has made numerous, albeit unsuccessful, attempts lawfully to obtain either a prescription for marihuana or permission to participate in a research study on the use of marihuana to treat scleroderma. The Massachusetts Legislature has considered a bill providing for the use of marihuana in therapeutic research on more than one occasion, but no such statute has been enacted in the Commonwealth. The Veterans Administration has determined that presently there is no research study on the use of marihuana to treat scleroderma and therefore will not dispense marihuana for the defendant's treatment.

In *Commonwealth* v. *Hood*, 389 Mass. 581, 595 (1983), quoting *Commonwealth* v. *O'Malley*, 14 Mass. App. Ct. 314, 325 (1982), we said, "It is, perhaps, 'more prudent for the judge to follow the traditional, and constitutionally sounder, course of waiting until all the evidence has been introduced at trial before ruling on its sufficiency to raise a proffered defense. If, at that time, the defendant has failed to produce some evidence on each element of the defense, the judge should decline to instruct on it. . . . In that event, the judge, may if appropriate, give curative instructions to caution the jury against considering evidence not properly before them' (citations omitted)." However, the defendant cannot fairly complain about the procedure adopted by the judge in this case if, as the Commonwealth contends and the judge appears to have concluded, the proof offered would not support a necessity defense. Our question, then, is whether, if the defendant were able to prove by admissible evidence at trial the facts contained in the offer of proof, a properly instructed fact finder could determine that the defendant had established the defense which he asserts.

"Under the common law defense of justification by necessity, a crime committed under the pressure of imminent danger may be excused if the harm sought to be avoided far

exceeds the harm resulting from the crime committed."
*Commonwealth* v. *Schuchardt*, 408 Mass. 347, 349 (1990),
citing *Commonwealth* v. *Hood, supra* at 590, and *Commonwealth* v. *Brugmann*, 13 Mass. App. Ct. 373, 376-377
(1982). "In essence, the 'competing harms' defense exonerates one who commits a crime under the 'pressure of circumstances' if the harm that would have resulted from compliance with the law significantly exceeds the harm actually
resulting from the defendant's violation of the law. At its
root is an appreciation that there may be circumstances
where the value protected by the law is, as a matter of public
policy, eclipsed by a superseding value which makes it inappropriate and unjust to apply the usual criminal rule. See
generally LaFave & Scott, Criminal Law § 50 (1972);
Arnolds & Garland, The Defense of Necessity in Criminal
Law: The Right to Choose the Lesser Evil, 65 J. Crim. L. &
Criminology 289, 291-296 (1974)." *Commonwealth* v.
*Brugmann, supra* at 376-377.

"We have ruled that 'the application of the defense is limited to the following circumstances: (1) the defendant is
faced with a clear and imminent danger, not one which is
debatable or speculative; (2) the defendant can reasonably
expect that his [or her] action will be effective as the direct
cause of abating the danger; (3) there is [no] legal alternative which will be effective in abating the danger; and (4) the
Legislature has not acted to preclude the defense by a clear
and deliberate choice regarding the values at issue.' " *Commonwealth* v. *Schuchardt, supra* at 349, quoting *Commonwealth* v. *Hood, supra* at 591. See *Commonwealth* v.
*Brugmann, supra* at 379. It must be understood, however,
that that oft-repeated principle, that the necessity defense is
limited to certain specified circumstances, does not mean
that, whenever those circumstances obtain, the defense automatically applies. Rather, the first question always is
whether the harm that would have resulted from compliance
with the law significantly outweighs the harm that reasonably could result from the court's acceptance of necessity as
an excuse in the circumstances presented by the particular

case. Only when a comparison of the "competing harms" in specific circumstances clearly favors excusing what would otherwise be punishable conduct, is it appropriate then to inquire whether the standards enumerated in the cases cited above, standards which themselves do not call for a comparison of competing harms, have been met.

We mention two illustrative cases. In *Commonwealth* v. *Thurber*, 383 Mass. 328 (1981), the defendant was convicted of escape from the Massachusetts Correctional Institution at Concord. At the trial, the defendant presented evidence that he had escaped because his life was in imminent danger at the prison. *Id.* at 329. In discussing the necessity defense, *id.* at 330, we quoted with approval a statement in a California case of the circumstances in which an escape from prison might be excused, one of the circumstances being that the escape be accomplished without violence, and another being that "[t]he prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat." *People* v. *Lovercamp*, 43 Cal. App. 3d 823, 831-832 (1974). In *Thurber*, *supra* at 330, we "[a]ssum[ed] that we would apply the doctrine [of necessity] as a justification for escape in a proper case." The extent of public harm likely to attend a peaceful escape from prison, followed by the prisoner's prompt submission to the authorities, would be minimal compared to the likely harm to the prisoner, as demonstrated by the defendant's evidence in *Thurber*, if he were to comply with the law. Common sense tells us that, in the absence of a clear and specific contrary statutory expression, the court would not frustrate legislative intent in a *Thurber*-type situation by recognizing a necessity defense.

*Commonwealth* v. *Iglesia*, 403 Mass. 132 (1988), provides another illustration. There, the defendant was charged with unlawfully carrying a firearm. He testified that he was attacked by a man with a gun, that he wrested the gun from the man, and that he immediately went to the police station with it. *Id.* at 133. Again, as we did in *Commonwealth* v. *Thurber*, *supra*, we "assume[d] . . . that, when 'a defendant

seizes a firearm from one who had expressed an immediate intention to use it, and flees to a place of safe-keeping,' *Commonwealth* v. *Weaver*, 400 Mass. 612, 615 (1987), such possession might be lawful." *Id.* at 134. In *Iglesia*, as in *Thurber*, the likely harm to society that would be likely to result from recognition of a necessity defense, carefully limited as to circumstances, would be significantly outweighed by the potential harm to the defendant, if his evidence were to be believed, if he were to comply with the law. It is fair to assume, in the absence of a specifically expressed contrary legislative intent, that judicial recognition of a necessity defense in the circumstances of the *Iglesia* case would not contradict any legislative policy determination.

Accepting the defendant's offer of proof, and assuming, as we do without decision, that the circumstances referred to above as enumerated in *Schuchardt*, *Hood*, and *Brugmann* obtain, nevertheless we rule that the defendant's proffered evidence does not raise the defense of necessity. In our view, the alleviation of the defendant's medical symptoms, the importance to the defendant of which we do not underestimate, would not clearly and significantly outweigh the potential harm to the public were we to declare that the defendant's cultivation of marihuana and its use for his medicinal purposes may not be punishable. We cannot dismiss the reasonably possible negative impact of such a judicial declaration on the enforcement of our drug laws, including but not limited to those dealing with marihuana, nor can we ignore the government's overriding interest in the regulation of such substances. See *Commonwealth* v. *Nissenbaum*, 404 Mass. 575, 583 (1989). Excusing the escaped prisoner in the circumstances presented by *Thurber*, *supra*, or the carrier of a gun in the circumstances of *Iglesia*, *supra*, is quite different from excusing one who cultivates and uses marihuana in the circumstances of this case.

*Judgments affirmed.*

LIACOS, C.J. (dissenting, with whom Nolan, J., joins). I believe that a jury, not a judge, ordinarily should be allowed to determine whether medical necessity is a defense to a charge of possession or cultivation of marihuana. "The defendant[ ] presented sufficient evidence to raise such a defense. Neither the judge below nor this court should substitute its judgment for the sound deliberations of the jury." *Commonwealth* v. *Schuchardt*, 408 Mass. 347, 352 (1990) (Liacos, C.J., concurring in part and dissenting in part).

The court today engages in speculative judicial fact finding by concluding that "the alleviation of the defendant's medical symptoms, the importance to the defendant of which we do not underestimate, would not clearly and significantly outweigh the potential harm to the public were we to declare that the defendant's cultivation of marihuana and its use for his medicinal purposes may not be punishable. We cannot dismiss the reasonably possible negative impact of such a judicial declaration on the enforcement of our drug laws, including but not limited to those dealing with marihuana, nor can we ignore the government's overriding interest in the regulation of such substances." *Ante* at 732. While I recognize that the public has a strong interest in the enforcement of drug laws and in the strict regulation of narcotics, I do not believe that the interest would be significantly harmed by permitting a jury to consider whether the defendant cultivated and used marihuana in order to alleviate agonizing and painful symptoms caused by an illness. The court seems to suggest that we should not condone the use of marihuana, regardless of a particular individual's reasons for using the drug. Although the court appears to recognize the defense by taking this position, it fails to give sufficient consideration to the rationale behind the common law defense of necessity. That rationale is based on the recognition that, under very limited circumstances, "the value protected by the law is, as a matter of public policy, eclipsed by a superseding value which makes it inappropriate and unjust to apply the usual criminal rule." *Commonwealth* v. *Brugmann*, 13 Mass. App. Ct. 373, 377 (1982).

The superseding value in a case such as the present one is the humanitarian and compassionate value in allowing an individual to seek relief from agonizing symptoms caused by a progressive and incurable illness in circumstances which risk no harm to any other individual. In my view, the harm to an individual in having to endure such symptoms may well outweigh society's generalized interest in prohibiting him or her from using the marihuana in such circumstances.[1] On a proper offer of proof I would recognize the availability of a necessity defense when marihuana is used for medical purposes. Accord *Jenks* v. *State*, 582 So.2d 676 (Fla. Dist. Ct. App. 1991); *State* v. *Bachman*, 61 Haw. 71 (1979); *State* v. *Hastings*, 118 Idaho 854, 856 (1990); *State* v. *Diana*, 24 Wash. App. 908, 915-916 (1979).

To recognize a medical necessity defense based on the use of marihuana for medical purposes would not allow *every* defendant charged with possessing or cultivating marihuana to present such a defense to the jury. Instead, "the application of the defense [would be] limited to the following circumstances: (1) the defendant is faced with a clear and imminent danger, not one which is debatable or speculative; (2) the defendant can reasonably expect that his [or her] action will be effective as the direct cause of abating the danger; (3) there is [no] legal alternative which will be effective in abating the danger; and (4) the Legislature has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue." *Commonwealth* v. *Schuchardt, supra* at 349, quoting *Commonwealth* v. *Hood*, 389 Mass. 581, 591 (1983). See *Commonwealth* v. *Brugmann, supra* at 379. The defendant's offer of proof satisfied all the elements of a ne-

---

[1]There is no reason to believe, as the court suggests, that allowing a defendant to present evidence of medical necessity to a jury will have a negative impact on the enforcement of drug laws. I am confident that juries would apply their wisdom and common sense in making sure that the necessity defense is not successfully utilized by defendants who use marihuana for purposes other than to alleviate agonizing and painful medical symptoms. In my view, this court's recognition of a medical necessity defense in the circumstances of this case would have a negligible impact on the enforcement of drug laws.

cessity defense. The judge erred in not allowing the defendant to present evidence of medical necessity to a jury of his peers.[2]

The defendant's offer of proof contained sufficient allegations that he faced a "clear and imminent danger." The defendant presented affidavits from two physicians who stated that the defendant's esophagus was dangerously constricted as a result of his illness, and that, without treatment, his esophagus would constrict to the point where the defendant would be unable to eat or drink without great difficulty and pain. The physicians also stated in the affidavits "that it does appear that [the defendant's] use of mari[h]uana does alleviate [his nausea, loss of appetite, difficulty in swallowing, spasticity, hypertension, and anxiety]." Thus, the defendant offered to prove the second element of a necessity defense by showing that he had a "reasonable expectation" that smoking marihuana would be effective in abating the danger. The third element was satisfied when the defendant offered to prove that he had unsuccessfully attempted to acquire marihuana legally by seeking authorization from the Federal government to use marihuana for medical research. Finally, the fourth element was satisfied in this case since the Legislature has not precluded the medical necessity defense by clearly and deliberately choosing among the values at stake. See *State* v. *Hanson*, 468 N.W.2d 77, 79 (Minn. Ct. App. 1991); *State* v. *Tate*, 102 N.J. 64, 72 (1986).

Since the defendant's offer of proof satisfied the four elements of a necessity defense, the judge's refusal to allow the defendant to present evidence of medical necessity to the jury improperly prevented the jury from exercising their vital functions of "[1] temper[ing] the application of strict rules of law by bringing the common sense judgment of a group of laymen to the case [and] . . . [2] stand[ing] as a check on arbitrary enforcement of the law. 'Fear of unchecked power, so typical of our State and Federal Governments in other respects, found expression in the criminal law in this insistence

---

[2]The defendant, after the judge's ruling, waived his right to a jury trial.

upon community participation in the determination of guilt or innocence.' *Duncan* v. *Louisiana*, 391 U.S. 145, 156 (1968)." *Commonwealth* v. *Schuchardt*, *supra* at 353 (Liacos, C.J., concurring in part and dissenting in part), quoting *Commonwealth* v. *Hood*, *supra* at 597 (Liacos, J., concurring). The court today once again unnecessarily interferes with the proper functions of the jury. I dissent.