NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11874


COMMONWEALTH  vs.  DAVID MAGADINI.



Berkshire.      December 7, 2015. - June 23, 2016.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.


Trespass.  Necessity.  Practice, Criminal, Request for jury
instructions.  Evidence, Cross-examination, Relevancy and
materiality, Bias of government witness.




Complaints received and sworn to in the Southern Berkshire
Division of the District Court Department on April 8, April 9,
and July 8, 2014.

The cases were tried before Fredric D. Rutberg, J.

The Supreme Judicial Court granted an application for
direct appellate review.


Joseph N. Schneiderman for the defendant.
Jessie J. Rossman (Matthew Segal with her) for American
Civil Liberties Union of Massachusetts & others.
John Bossé, Assistant District Attorney, for the
Commonwealth.


HINES, J.  The defendant, David Magadini, was convicted by

jury on seven counts of criminal trespass, each based on the

defendant's presence, in 2014, in privately-owned buildings where he was the subject of no trespass orders.[1]  Five incidents occurred between February and March, the sixth occurred on April 8, and the seventh occurred on June 10.  Before trial and during the charge conference, the defendant requested a jury instruction on the defense of necessity, asserting that his conduct was justified as the only lawful alternative for a homeless person facing the "clear and imminent danger" of exposure to the elements during periods of extreme outdoor temperatures.  The judge denied the request, concluding that the defendant had legal alternatives to trespassing available.  As to each conviction, the judge imposed concurrent sentences of thirty days in a house of correction.  A single justice of the Appeals Court stayed the sentences pending resolution of this appeal.  We granted the defendant's application for direct appellate review.

On appeal, the defendant asserts the following errors at trial:  (1) denial of his request for an instruction on the defense of necessity; (2) limitation of his cross-examination of witnesses; (3) misstatements made by the prosecutor during closing argument; and (4) denial of his motion for a required

---

[1] The judge allowed the defendant's motion for a required finding of not guilty on an eighth charge, which was based on the defendant's presence at the site of the former St. James Church, located in Great Barrington, on April 19, 2014.

finding of not guilty on the charge stemming from the April 8 incident.[2]  We conclude that the judge erred in denying the defendant's request for an instruction on the defense of necessity as to the six trespassing charges related to the incidents from February through April, 2014,[3] and that the error was prejudicial.  Accordingly, we vacate the first six convictions and remand for a new trial.[4]  The defendant did not, however, meet his burden to demonstrate the foundational requirements for a necessity defense instruction as to the seventh conviction, stemming from the June 10 trespass.  Therefore, we affirm that conviction as well as the denial of his motion for a required finding of not guilty for the April 8 incident.  We address the defendant's remaining claims, which relate to issues that may arise at retrial.

Background.  We recite the facts the jury could have found, reserving certain details for our discussion of the specific

---

[2] The defendant, in multiple briefs that he contends are filed in accordance with Commonwealth v. Moffett, 383 Mass. 201 (1981), raises several new claims and expands on claims made in his appellate brief.

[3] These six charges related to the trespasses by the defendant on February 20, February 21, March 4, March 6, March 28, and April 8.

[4] We acknowledge the amicus brief submitted by the American Civil Liberties Union of Massachusetts, Committee for Public Counsel Services, and Massachusetts Association of Criminal Defense Lawyers in support of the defendant.

issues raised.  In 2014, the defendant was charged with trespassing on three properties in Great Barrington -- Barrington House, Castle Street, and SoCo Creamery.  Barrington House is a mixed-use building with several different restaurants, an enclosed atrium, and apartments above the businesses.  Castle Street is a three-story building with retail establishments, offices, and apartments.  SoCo Creamery is an ice cream shop.  The defendant was barred from each property by no trespass orders.  The owner of the Castle Street building had the defendant served with a no trespass order in July, 2008; the manager of Barrington House had the defendant served in June, 2012; and the owner of SoCo Creamery had the defendant served in January, 2014.  All of the no trespass orders were in effect at the time the charges were brought against the defendant.

Four charges related to the defendant's presence at Barrington House.  On February 21, March 4, and March 6, police found the defendant lying in a hallway by a heater during the evening, nighttime, or early morning hours of days described as "cold" or "very cold."  At approximately noon on April 8, a day described as "cool," police responded to a report and observed the defendant walking through a common area in the Barrington House toward the front door.  Two charges stemmed from the defendant's presence at Castle Street, where police had found the defendant lying on the floor in the lobby next to a heater

during periods of cold weather. The first incident occurred between 8 A.M. and 10 A.M. on February 20, 2014; the defendant was awake. The second incident occurred at approximately 6:30 A.M. on March 28; the defendant was sleeping. The seventh charge was based on conduct that occurred on June 10, 2014, when the defendant entered SoCo Creamery, ignored requests by the clerk to leave the premises, and used the bathroom for ten to fifteen minutes. The defendant did not dispute that he violated all of the trespass orders, focusing his case instead on the necessity defense in cross-examination and his direct testimony.

The defendant, a lifelong resident of Great Barrington, became homeless after he moved out of his parents' home in 2004. His purpose in moving out was to "reorganize." He planned to return to his parents' home, but he was unable to do so because the "landlord," who "wanted [the defendant] out" refused to allow it. After leaving his parents' home, he generally lived outside year-round, but during the winter months, he tried to "find a more sheltered area" from the "ice and a snow storm." During the cold weather, the defendant used blankets, gloves, and scarves to try to stay warm, but when the weather was "so severe . . . that [it was] not possible," he would seek shelter in private buildings.

For a two- to three-month period in the winter of 2007, the defendant stayed at the local homeless shelter, called the

Construct.[5]  Three days before he began staying there, he had gone to that shelter at approximately 3 A.M. following a blizzard.  He was refused entry, and he stayed on the porch for about an hour before being asked to leave.  A few days later, he spoke with someone from the shelter, and he was allowed to stay for a few months before he was told to leave because of "certain issues."  Therefore, the defendant had no other place to stay in Great Barrington.[6]  For a period of "three to four years," he lived outdoors, first at Stanley Park and later at the outdoor gazebo behind the Great Barrington Town Hall, where he had been living at the time of the trespass incidents.  He considered the gazebo his home and registered to vote from that address.[7]

---

[5] As pointed out in the amicus brief, on its Web site, Construct advertises "permanent" and "transitional" housing, see http://constructinc.org/about-us/ [https://perma.cc/5A85-7G9K], and asserts that persons who "lost" housing "may be eligible for temporary room and board and support services while . . . mak[ing] the transition from homelessness to permanent housing," see http://constructinc.org/housing-options/ [https://perma.cc/X858-8Z5W].

[6] The defendant testified that he had had one friend who would take him in occasionally, but he learned the day before his testimony that the friend had "recently" passed away. During follow-up questioning, the defendant testified that there was no other "private apartment" where he could stay during the applicable time period.  He also responded, "No," to the question whether there was any "private residence other than the public parks" where he could stay.

[7] The defendant testified that he registered to vote using the address of the gazebo, 334 Main Street, as his "official residency."

At the time of the trial, the defendant was a sixty-seven year old unemployed college graduate. He had worked in the past, but he was not employed at the time he was charged with the trespassing offenses. The defendant had attempted to obtain an apartment almost "every week for about seven years." Although he had money to pay for an apartment depending on the day, he explained that it was very difficult to find an apartment in Great Barrington because of the upfront fees. Accordingly, he was unable to obtain an apartment. He was aware of a homeless shelter in Pittsfield, but he did not consider renting lodging or staying at a homeless shelter outside of Great Barrington. He testified, "I was born here and I intend to stay here." He does not have a driver's license.

Discussion. 1. Necessity defense. The defendant claims that the judge erroneously denied his request for a jury instruction on the defense of necessity and that he improperly excluded evidence relevant to the defense. The common-law defense of necessity "exonerates one who commits a crime under the 'pressure of circumstances' if the harm that would have resulted from compliance with the law . . . exceeds the harm actually resulting from the defendant's violation of the law." Commonwealth v. Kendall, 451 Mass. 10, 13 (2008), quoting Commonwealth v. Hood, 389 Mass. 581, 590 (1983). As such, the necessity defense may excuse unlawful conduct "where the value

protected by the law is, as a matter of public policy, eclipsed by a superseding value . . . ." Kendall, supra, quoting Hood, supra.

For a defendant to be entitled to a necessity defense instruction, he or she must present "some evidence on each of the four underlying conditions of the defense," Kendall, 451 Mass. at 14:  "(1) a clear and imminent danger, not one which is debatable or speculative"; (2) [a reasonable expectation that his or her action] will be effective as the direct cause of abating the danger; (3) there is [no] legal alternative which will be effective in abating the danger; and (4) the Legislature has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue." Id. at 13-14, quoting Hood, 389 Mass. at 591.  If the defendant satisfies these foundational conditions, "the burden is on the Commonwealth to prove beyond a reasonable doubt the absence of necessity." Commonwealth v. Iglesia, 403 Mass. 132, 134 (1988).

The judge focused only on the third element in his denial of the defendant's request for a necessity defense instruction at the close of all the evidence.  The judge ruled that the defendant had other available legal alternatives, "motels, and hotels, the police station," and that the evidence was lacking on the defendant's inability to "rent a hotel room on these isolated evenings."  We conclude that the judge erred in ruling

that the defendant failed to meet his burden to provide some evidence that showed the lack of an available legal alternative to the trespasses.

a. Clear and imminent danger. Before we address the third element, we review the first element, "clear and imminent danger," because the Commonwealth contends that the defendant failed to meet the foundational requirement for this element as to the seventh offense, which occurred on June 10, 2014.[8]

There appears to be little question that the weather conditions on the dates of the offenses in February and March presented a "clear and imminent danger" to a homeless person.[9] The temperatures on the dates of the offenses were not admitted at trial, but the weather on the February and March dates was described as "cold," "really cold," and "very cold." Moreover, the timing of each of those incidents, in the early morning or late evening hours when the defendant was either sleeping or lying down, suggests the dangerousness of the circumstances

---

[8] The second and fourth elements of the necessity defense are not contested.

[9] Citing a report of the National Coalition for the Homeless, Winter Homelessness Services: Bringing our Neighbors in from the Cold, at 15 (Jan. 2010), the amici assert that homeless people routinely face life-threatening conditions in the winter, noting that "life-threatening cases of hypothermia do not require extreme temperatures; indeed, they often occur when the ambient temperature is between [thirty-two] degrees Fahrenheit and [forty] degrees Fahrenheit."

where sleeping may place one in the same position for an extended period and, thus, increases the potential harm from the weather. See Jones v. Los Angeles, 444 F.3d 1118, 1138 (9th Cir. 2006) ("involuntary sitting, lying, or sleeping on public sidewalks . . . is an unavoidable consequence of being human and homeless without shelter"). See also In re Eichorn, 69 Cal. App. 4th 382, 389 (1998) ("Sleep is a physiological need, not an option for humans"). Moreover, the Commonwealth concedes that the defendant met his burden of demonstrating a "clear and imminent danger" for these six incidents.[10]

We agree with the Commonwealth that the defendant did not meet his burden to show a "clear and imminent danger" for the incident on June 10, where the evidence showed only that he had to use the bathroom.[11] Accordingly, we do not include the incident on June 10 in our analysis requirements of the availability of "legal alternatives" to trespass.

---

[10] The Commonwealth does not contest the "clear and imminent danger" element as to the April 8 trespass, therefore, we leave for another day whether, as a matter of law, the reported temperature, described as "cool," would create a clear and imminent danger to a homeless person at noon when he was charged.

[11] Trial counsel asked the clerk present at the time the defendant entered the store whether the defendant said that his entry was "an emergency and that he really needed . . . to use the bathroom"; she responded, "No, . . . he didn't say anything to me." Moreover, the defendant did not request a necessity defense instruction on this charge, instead requesting the instruction for the charges that occurred "between February and let's say April, due to the weather."

b.  Availability of lawful alternatives.  We have explained previously that satisfaction of the third element requires a defendant to demonstrate that he "ma[d]e himself aware of any available lawful alternatives, 'or show[ed] them to be futile in the circumstances.'"  Kendall, 451 Mass. at 15, quoting Commonwealth v. Pike, 428 Mass. 393, 401 (1998).  On that point, the defendant must present "some evidence," enough that "supports at least a reasonable doubt" whether the unlawful conduct was justified by necessity.  Kendall, 451 Mass. at 14.  In other words, the defendant must present enough evidence to demonstrate at least a reasonable doubt that there were no effective legal alternatives available before being entitled to an instruction on the necessity defense.  This does not require a showing that the defendant has exhausted or shown to be futile all conceivable alternatives, only that a jury could reasonably find that no alternatives were available.  See Kendall, supra at 19 (Cowin, J., dissenting), citing Iglesia, 403 Mass. at 135.

The parties agree that this issue is governed by the Kendall case, but disagree as to its application.  In Kendall, the defendant had driven while intoxicated to the hospital so that he could take his girl friend for medical treatment of a serious head wound.  Id. at 11-12.  He was charged with operating a motor vehicle while under the influence of liquor and requested an instruction on the defense of necessity because

he and his girl friend did not have telephones from which they could call 911. Id. at 12. A majority of this court affirmed the judge's decision to deny the defendant's request because the record was "devoid of evidence that the defendant made any effort to seek assistance from anyone prior to driving a motor vehicle while intoxicated." Id. at 15. Further, the evidence demonstrated that at least one neighbor, who lived about forty feet from the defendant's residence, was home at the time of the incident, that there was a fire station approximately one hundred yards from that neighbor's home, and that the defendant and his girl friend had just left a Chinese restaurant within walking distance from the defendant's home. Id. at 11-12. Accordingly, the defendant had not met his burden to "present at least some evidence at trial that there were no effective legal alternatives." Id. at 15. Three dissenting justices disagreed, concluding that the defendant had met his burden because his conduct was not unreasonable in light of the "risk of failure" from the available alternatives; and therefore, weighing the propriety of defendant's choice should have been given to the jury. Kendall, 451 Mass. at 16, 18, 19 (Cowin, J., dissenting).

Here, the defendant's evidence was sufficient to meet his burden under the majority holding of Kendall. In determining whether there has been sufficient evidence of the foundational conditions to the necessity defense, "all reasonable inferences

should be resolved in favor of the defendant, and, no matter how incredible his testimony, that testimony must be treated as true." Pike, 428 Mass. at 395. Taken in this light, there is at least "some evidence" that the defendant lacked effective legal alternatives to trespass during cold days and nights. Kendall, 451 Mass. at 15. The defendant testified that he stayed at an outdoor gazebo "[p]retty much" year round, that in 2007 he was told to leave the only local homeless shelter and had previously been denied entry to the shelter in the middle of the night following a blizzard, that no other places "want [him] in . . . their facility," that he was unable to rent an apartment despite repeated attempts, and that there was nowhere besides public parks where he could stay. Additionally, the officer who asked the defendant to leave the Barrington House at approximately 9:30 P.M. on February 21 testified that the defendant had to go back outside, and the judge sustained an objection to defense counsel's question about whether the officer offered to transport him to any other shelter or facility. The manager of Castle Street corroborated the defendant's attempt to rent an apartment by his testimony that he called police to have the defendant removed from the building after the defendant "forced his way onto the third floor of the building, flashing money in hand, demanding I rent him an apartment."

The Commonwealth argues that the defendant failed to meet his burden because he presented no evidence that he was unable to rent an apartment outside of Great Barrington, that he was unable to gain entry to the Pittsfield shelter, and that he would still be excluded from the local homeless shelter in 2014. The Commonwealth's argument is unavailing. We do not require an actor facing a "clear and imminent danger" to conceptualize all possible alternatives. Kendall, 451 Mass.at 16 n.5. So long as the defendant's evidence, taken as true, creates a reasonable doubt as to the availability of such lawful alternatives, the defendant satisfies the third element. Contrast Kendall, supra; Pike, 428 Mass. at 401. The defendant has done so here.[12]

Additionally, we note that the options proposed by the Commonwealth do not appear to be effective alternatives on the record before us. Where the only local homeless shelter had previously denied the defendant entry at 3 A.M. following a blizzard and had later told him he had to leave, the law does not require the defendant to continue to seek shelter there in order to demonstrate that doing so is futile. Moreover, the

---

[12] Whether a jury would believe that the defendant had no lawful alternative where he could obtain shelter is not an appropriate consideration for our analysis. See Commonwealth v. Robinson, 382 Mass. 189, 200 (1981), quoting Commonwealth v. Campbell, 352 Mass. 387, 398 (1967) ("[t]he fact that the evidence may not be of a character to inspire belief does not authorize the refusal of an instruction based thereon").

defendant's conduct is viewed at the time of the danger, and actions that the defendant could have taken to find shelter before the dangerous condition arose do not negate the conclusion that there were no lawful alternatives available at the time of his unlawful conduct.  See United States v. Kpomassie, 323 F. Supp. 2d 894, 901 (W.D. Tenn. 2004) (alternatives not available at time of crime when their availability was "sufficiently far in the past").

We do not view the requirement that a defendant consider lawful alternatives as broadly as suggested by the Commonwealth. Our cases do not require a defendant to rebut every alternative that is conceivable; rather, a defendant is required to rebut alternatives that likely would have been considered by a reasonable person in a similar situation.[13]  Moreover, we are not

---

[13] As the level of harm that could arise from the unlawful conduct increases, so does the requirement for considering lawful alternatives.  See Commonwealth v. Hutchins, 410 Mass. 726, 731-732 (1991) (discussing weighing of "competing harms"). We recognize that the defendant's conduct may not have been appreciated by owners, managers, and residents of the private buildings in which the defendant sought cover, but there was no evidence that the defendant's presence did, or had the potential to, cause physical harm to any persons.  Accordingly, the requirement to consider alternatives may be viewed more leniently where the potential harm was only property-related than it would be viewed where the unlawful conduct, as in Kendall, 451 Mass. at 15, had the potential to harm both persons and property.  The doctrine of necessity has its roots in the notion that "[t]he law deems the lives of all persons far more valuable than any property."  United States v. Ashton, 24 F. Cas. 873, 874 (C.C.D. Mass. 1834) (No. 14,470).

prepared to say as a matter of law that a homeless defendant must seek shelter outside of his or her home town in order to demonstrate a lack of lawful alternatives.[14]  Our law does not permit punishment of the homeless simply for being homeless.[15]  See Commonwealth v. Canadyan, 458 Mass. 574, 579 (2010) (setting aside finding that defendant violated condition of probation where homeless shelters did not have technology required for compliance).  Once the foundational requirements are met, the necessity defense allows a jury to consider the plight of a homeless person against any harms caused by a trespass before determining criminal responsibility.[16]

---

[14] The viability of this option proposed by the Commonwealth is hampered for the additional reason that the defendant had no driver's license or any other apparent method to make the twenty-mile trek to Pittsfield.

[15] As of 2014, Massachusetts had the fifth highest number of homeless people in the United States.  2014 Annual Homeless Assessment Report to Congress, Office of Community Planning and Development, U.S. Dep't of Hous. and Urban Dev., Part 1, at 8 (Oct. 2014).  A single male, such as the defendant in this case, is without emergency shelter options granted by law to other residents of Massachusetts.  See G. L. c. 23B, § 30 ("the [Department of Housing and Community Development] shall administer a program of emergency housing assistance to needy families with children and pregnant wom[e]n with no other children").

[16] Allowing a defendant to defend his trespassing charges by claiming necessity will not, of course, condone all illegal trespass by homeless persons.  It simply allows a jury of peers to weigh the "competing harms" to determine criminal responsibility.  See Hutchins, 410 Mass. at 730.  In Hutchins, this court reviewed different circumstances where the balance of

Accordingly, in the circumstances of this case, we conclude that the judge erred in denying the defendant's request for an instruction on the defense of necessity. As the defendant satisfied the foundational elements entitling him to the defense, the judge's failure to instruct the jury about the defendant's principal defense requires a new trial. See Commonwealth v. Lapage, 435 Mass. 480, 486 (2001) (ordering new trial after judge erred in omitting instruction on principal defense). We therefore vacate the defendant's convictions of the charges occurring in February, March, and April, 2014.

c. Exclusion of evidence relevant to necessity defense. Because it is likely to arise at a retrial, we address the defendant's argument that the judge infringed on his ability to demonstrate the foundational elements of the necessity defense where the judge limited the scope of his questioning on

---

harms was considered. Id. at 731-732, discussing Commonwealth v. Thurber, 383 Mass. 328 (1981), and Commonwealth v. Iglesia, 403 Mass. 132 (1988). Specifically, the court noted that a prison escape would likely be justified where a prisoner was in imminent danger at the prison and submitted himself directly to authorities after escape or where an individual who was unlawfully carrying a firearm would likely be justified where the carrier "wrested the gun" from an attacker and immediately went to the police station. Id. Here, whether a homeless person's trespass in a privately-owned building where he previously had been barred from entry is a greater or lesser harm than the intrusion suffered by the owner and occupiers of the building is a question properly decided by a jury where the defendant met the foundational elements for the necessity defense. Iglesia, supra at 135 (jury instructed on whether defendant made "better choice" by acting illegally).

relevancy grounds. Specifically, the judge ruled as "irrelevant" questions by defense counsel during cross-examination that related to whether the defendant was asleep or intoxicated when trespassing.[17] Additionally, the judge prohibited counsel from asking officers who responded to the trespass calls whether they offered the defendant transportation to a shelter. "Evidence is relevant if it renders the desired inference more probable than it would be without the evidence." Poirier v. Plymouth, 374 Mass. 206, 210 (1978), citing Green v. Richmond, 369 Mass. 47, 59 (1975). Relevant evidence may be admissible if it "tends to establish the issue" or "constitutes a link in the chain of proof." Poirier, supra, quoting Commonwealth v. Abbott, 130 Mass. 472, 473 (1881). Here, that evidence would be anything that tends to establish any of the four elements of the necessity defense. We conclude that the questions set forth above speak to the presence of a clear and

---

[17] The defendant contested, on this same ground, several other evidentiary rulings where the judge limited inquiry. For example, the judge concluded that the defendant's attempt to introduce evidence that one of the tenants may have given him permission to stay in the common areas of the building was irrelevant, but that finding also was predicated on the defendant's failure to establish that anyone had authority to do so. Several objections to the defendant's testimony also were sustained where the defendant was nonresponsive and testifying in a narrative. Additionally, the judge found questions about how the defendant arrived at court that day to be irrelevant, but did allow testimony that he did not have a driver's license. We do not discern any error in these rulings on the record before us.

imminent danger, the effectiveness of the defendant's conduct in abating that danger, or the availability of alternatives, and are therefore relevant.

2. Bias. The defendant argues that the judge improperly excluded evidence relevant to bias, depriving him of his right to present a full defense under art. 12 of the Massachusetts Declaration of Rights. Specifically, the defendant argues that the judge erred in limiting his cross-examination of the property manager for the Barrington House and the owner of SoCo Creamery where trial counsel's questions were designed to show bias against him and a potentially illegitimate ground on which the no trespass orders were based. We address the issues relating to the witness for Barrington House because they are likely to arise at retrial, and to the witness for SoCo Creamery because we have not vacated the defendant's conviction of the June 10 charge.

As to the property manager for the Barrington House, the defendant claims error in the judge's rulings sustaining the Commonwealth's objections to the following questions: whether the defendant was a "disruption with . . . tenants," whether his presence was "annoying to [her] as a property manager," and whether he was "trespassed . . . basically because he's on the property itself." As to the owner of SoCo Creamery, the defendant argues that the judge erroneously prohibited counsel

from asking the owner whether he had "expressed a strong opinion that [he] fe[lt] that [the defendant] has no respect for any businesses in town" and whether the defendant had "become a nuisance in your eyes to your business."  The prosecutor did not object on any stated ground, the judge did not express his reasons for sustaining the objections, and defense counsel did not directly respond to the objections.

"The right of a criminal defendant to cross-examine a prosecution witness to show the witness's bias, and hence to challenge the witness's credibility, is well established in the common law, in the United States Constitution," and in art. 12 of the Massachusetts Declaration of Rights.  Commonwealth v. Tam Bui, 419 Mass. 392, 400, cert. denied, 516 U.S. 861 (1995).  A judge has "no discretion to bar all inquiry into the subject" of bias where the defendant demonstrates there is such a possibility.  Id. at 400.  The defendant must, however, "make a 'plausible showing' of alleged bias, with a factual basis for support."  Commonwealth v. Sealy, 467 Mass. 617, 624 (2014), quoting Tam Bui, supra at 401.  If the defendant fails to do so, the judge has discretion to exclude the evidence.  Sealy, supra.

The defendant made no showing at trial of the alleged bias and argues on appeal that a per se bias exists against homeless persons, which calls into question the legitimacy of the no trespass orders.  Neither witness testified to the grounds for

obtaining the no trespass orders for Barrington House and SoCo Creamery or about any details surrounding the charged conduct.[18] Weighed against the actual testimony provided by these two witnesses, there was no error in excluding this line of questioning. Where the witnesses did not provide details about the basis for the no trespass orders, the legitimacy of the orders was not a subject of their testimony and would not have been affected by any claimed bias.

3. Prosecutor's closing argument. The prosecutor stated in his closing argument that the defendant "testified that he was at the Construct up until the first week of March before these incidents occur, before then on his own testimony he was at the Construct." The defendant, however, testified that he stayed at the Construct in 2007, not 2014. The defendant argues on appeal that this misstatement was prejudicial to his argument that he sought shelter during the cold out of necessity. Because we assume that this misstatement will not occur at retrial and only affects the convictions that we have vacated, we do not discuss the claim further.

4. April 8 incident. The defendant argues that the judge erred in denying his motion for a required finding of not guilty

---

[18] The no trespass orders for the Barrington House and SoCo Creamery were authenticated and introduced during the testimony of the two witnesses.

on the charge stemming from his presence at Barrington House on April 8. Specifically, he argues that his presence in the publicly accessible common areas of the building during business hours is an insufficient basis on which he could be convicted of trespassing.

The criminal trespass statute, G. L. c. 266, § 120, provides in relevant part, "Whoever, without right enters or remains in or upon the dwelling house, [or] buildings . . . of another . . . after having been forbidden so to do by the person who has lawful control of said premises . . . shall be punished." The defendant argues that a guilty verdict requires loitering or lingering, and because the record fails to establish either, he must be acquitted of the charge. We disagree. The criminal trespass statute does not require this extra element that the defendant seeks to include.

The defendant's reliance on Commonwealth v. Richardson, 313 Mass. 632 (1943), is unavailing. In Richardson, the defendants, Jehovah's Witnesses, were charged with trespass based on their presence in the common area of an apartment building, right after they had been directly told that they were prohibited from doing so. We concluded that the defendants had an implied license to use the common areas of the building to contact tenants even without "any proof of direct authority"; and

therefore, the defendant's "entry" was lawful.[19]  Id. at 639-640.
The facts of this case are significantly different than those in
Richardson.  Here, it is uncontested that persons with authority
had banned the defendant from the Barrington House prior to any
of the charged entries.  Accordingly, any license to enter the
common areas that may have been implied was revoked by the no
trespass order.  See Hood, 389 Mass. at 590 ("Even if
[defendants] had an implied license to enter based on
Richardson, they had no right to remain after those with lawful
control of the property asked them to leave").

The judge did not err in denying the defendant's motion for
a required finding of not guilty.

5.  The defendant's Moffett briefs.  The defendant, in what
he characterizes as briefs filed pursuant to Commonwealth v.
Moffett, 383 Mass. 201 (1981), raises several claims for our
review.  We have reviewed these issues and conclude that they do
not merit relief.

6.  Conclusion.  Because we conclude that the judge erred
in denying the defendant's request for a jury instruction on the
defense of necessity for the trespassing charges that occurred
in February, March, and April, 2014, we vacate those six

_____

[19] In Commonwealth v. Richardson, 313 Mass. 632, 634-635
(1943), we noted that G. L. c. 266, § 120 (Ter. Ed.), prohibits
entry and remaining on a property without right, but the
defendant had been charged only with unlawful entry.

convictions and remand for a new trial.  We affirm the conviction stemming from conduct that occurred on June 10, 2014.

<u>So ordered</u>.