STATE of Iowa, Appellee,

v.

Chester WALTON, Jr., Appellant.

No. 65216.

Supreme Court of Iowa.

Oct. 21, 1981.

James F. Whalen of Dunbar & Dunbar, Waterloo, for appellant.

Thomas J. Miller, Atty. Gen., Lona Hansen, Asst. Atty. Gen., and David Correll, Black Hawk County Atty., for appellee.

Considered by REYNOLDSON, C. J., and UHLENHOPP, McCORMICK, McGIVE-RIN, and SCHULTZ, JJ.

REYNOLDSON, Chief Justice.

This appeal is a sequel to *State v. Walton*, 311 N.W.2d 110 (Iowa 1981) (*Walton I*), filed today. After he shot T. J. Wilder on October 30, 1979, defendant shot Wilder's cousin, Cynthia Jones, on November 14, 1979, at the Club Rendezvous in Waterloo. He was again charged with carrying weapons, a violation of section 724.4, The Code 1979, and the receipt, transportation, or possession of a weapon by a felon, a violation of section 724.26, The Code 1979. A jury found him guilty on both counts. He was sentenced to two years' imprisonment for each violation, and now appeals. We reverse and remand for new trial.

Defendant contends trial court erred (1) in overruling his motion to dismiss the section 724.26 count, grounded on the contention that the statute had no application to a felon convicted before its effective date; (2) in failing to instruct the jury on his asserted defense of necessity; and (3) in overruling his objections to an exhibit disclosing his conviction of other crimes.

I. *Application of Section 724.26.*

What we wrote in *Walton I* applies here. *State v. Hall*, 301 N.W.2d 729, 731–33 (Iowa 1981), is controlling and demolishes defendant's rationale. *Accord, State v. Pinckney*, 306 N.W.2d 726, 728 (Iowa 1981).

II. *Defense of Necessity.*

Defendant produced testimony tending to show that after he shot Wilder he was the target of threats by Wilder's friends and cousin, Cynthia Jones; that he complained to the police, the county attorney, and the public defender without success; and that Jones carried a gun. Although defendant did not testify, the inference is raised that he thought it necessary to carry a revolver for his own protection.

Defendant's evidence also disclosed that he was advised by personnel in the offices of the county attorney and public defender, by the police, and by his own sister to stay at home (he was unemployed) and to avoid Waterloo's Fourth Street and its taverns, where he would likely encounter the persons he allegedly feared. Defendant took the position that he would not stay at home, that "he was a man and he was going to go wherever he wanted to go."

Trial court rejected defendant's requested instruction on the defense of necessity and refused to instruct the jury on this defense. Defendant insists this was reversible error.

It is true this court early recognized the defense of necessity. *State v. Ward*, 170 Iowa 185, 152 N.W. 501 (1915). Although

historically this defense involved only physical forces, W. LaFave & A. Scott, *Handbook on Criminal Law*, § 50, at 381 (1972); R. Perkins, *Criminal Law* 956 (2d ed. 1969), we held it applicable in cases of human forces directed against the person in *State v. Reese*, 272 N.W.2d 863, 866 (Iowa 1978), a prisoner escape case.

*Reese* addressed unique circumstances anchored in the defendant's confinement, and accordingly generated conditions for invoking the defense that do not apply generally. *Reese*, 272 N.W.2d at 866. The rationale of the necessity defense lies in defendant being required to choose the lesser of two evils and thus avoiding a greater harm by bringing about a lesser harm. At least one commentator has suggested the following factors as a framework for analysis where the defendant is not personally at fault in creating the situation calling for the necessity to make a selection: (1) the harm avoided, (2) the harm done, (3) the defendant's intention to avoid the greater harm, (4) the relative value of the harm avoided and the harm done, and (5) optional courses of action and the imminence of disaster. LaFave & Scott, *supra*, § 50, at 385–88.

 For the purposes of this case we assume the necessity defense may be available to a felon who frequents bars armed with a concealed firearm, even though we cannot now conceive such circumstances. We also make the doubtful assumption that this defendant did not bring about the situation which required him to go armed. Nonetheless, although the State must carry the burden to disprove the necessity defense beyond a reasonable doubt, the defendant has the burden of generating a fact question on the defense. *Reese*, 272 N.W.2d at 867. If all the requirements of the defense are not addressed in the defendant's evidence, trial court is not obligated to submit the issue to the jury. *See United States v. Campbell*, 609 F.2d 922, 924–25 (8th Cir. 1979), *cert. denied*, 445 U.S. 918, 100 S.Ct. 1282, 63 L.Ed.2d 604 (1980) (coercion). We find defendant's evidence in this case not

only failed to generate a fact question on necessity, it affirmatively disclosed the defense was not available to him.

The necessity defense does not apply except in emergency situations where the threatened harm is immediate and the threatened disaster imminent. The defendant must be stripped of options by which he or she might avoid *both* evils. *See Reese*, 272 N.W.2d at 866–67; *State v. Johnson*, 289 Minn. 196, 201, 183 N.W.2d 541, 544 (1971); LaFave & Scott, *supra*, § 50, at 388.

This requirement that the threat must be immediate and not future has been invoked in related defenses. In a case of compulsion, or duress, *State v. Clay*, 220 Iowa 1191, 1202–03, 264 N.W. 77, 83 (1935), we approved the following language, which we gleaned from several sources:

> Fears of future injuries do not excuse an offense. . . . The necessity which will excuse a man for breach of law must be instant and imminent. . . .
>
> . . . The compulsion which will excuse a criminal act, however, must be present, imminent, and impending, and of such a nature as to induce a well grounded apprehension of death or serious bodily harm if the act is not done. A threat of future injury is not enough. Such compulsion must have arisen without the negligence or fault of the person who insists upon it as a defense.

*See also Campbell*, 609 F.2d at 924 ("a defense of duress or coercion requires that there be an immediate threat of death or serious bodily harm . . . and it must be in a situation in which there was no opportunity to avoid the danger"); Perkins, *supra*, at 954 ("It is not sufficient [for the defense of compulsion] . . . that a threat is now made relating only to the future . . . ."). *Cf.* § 704.10, The Code (compulsion specifically requires a reasonable belief that the menace of serious injury be imminent).

Analyzing defendant's evidence under the fifth factor, above, we find no evidence that the alleged threats placed him in immediate

danger, or that options were not open to him to avoid the possibility of harm. Accordingly, we hold defendant's evidence did not generate a jury question on the defense of necessity, and that trial court did not err in refusing to submit this issue to the jury.

### III. *Evidence of Other Crimes.*

Unlike *Walton I*, in this case the State narrowed its offer of evidence to prove defendant was a felon. It offered, as separate exhibits, a copy of a probation violation report and a copy of the judgment revoking probation and convicting defendant of the crime of malicious injury to a building. Defendant pointed out these instruments contained information concerning the offenses upon which the revocation was grounded, and objected that this evidence was prejudicial and would "inflame the jury." Defendant offered to "stipulate," and by that we assume he intended to concede or admit on the record the point the State was seeking to prove, that he had pled guilty to the section 714.1 violation and that the deferred sentence was later revoked.

Trial court sustained the objection as to the probation violation report, but permitted the judgment exhibit to go to the jury. Thus the jury, in addition to learning defendant was convicted on the malicious injury to a building charge, also learned he had been convicted of assault and battery, and driving while his license was under suspension.

■ In the circumstances disclosed here we hold this was prejudicial error. Our analysis in *Walton I* applies. *See State v. Rupp*, 282 N.W.2d 125, 130 (Iowa 1979); *State v. Griffin*, 257 Iowa 852, 854, 135 N.W.2d 77, 78 (1965). Upon retrial, if defendant does not concede or admit of record the very point the State seeks to prove, the State may only offer that portion of the judgment of conviction designated in *Walton I*, concealing the portion that reveals the other crimes that triggered the probation revocation.

We reverse the judgment of the district court and remand for new trial.

REVERSED AND REMANDED.