**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Anthony ROME, Sr., Defendant and Appellant.**

**No. 15925.**

Supreme Court of South Dakota.

Argued May 23, 1988.

Decided July 13, 1988.

Frank E. Geaghan, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on brief.

Steve Miller, Sioux Falls, for defendant and appellant.

MORGAN, Justice.

Defendant and appellant, Anthony Rome, Sr. (Anthony), was found guilty by the trial court of taking a minor child from the custodial parent, in violation of SDCL 22–19–9 and 22–19–10.* Anthony was sentenced to five years in the South Dakota Penitentiary, execution of sentence suspended upon his compliance with certain conditions of probation. Anthony appeals. We reverse and remand.

Anthony raises four issues on appeal. First, whether justification/necessity is a proper defense to the crime of childnapping and, if so, whether the trial court's denial of the presentation of such defense is grounds for reversal. Second, whether the trial court committed reversible error in allowing the prosecutor to reopen his case for the admission of additional evidence once closing arguments had begun. Third, whether the trial court erred in denying Anthony's motion for judgment of acquittal. Fourth, whether the trial court erred in amending its oral sentence so as to include an additional probation condition.

Anthony and his ex-wife, Cathy, were divorced in June of 1983 and at the time of the alleged offense were involved in custody litigation concerning their minor son, Anthony Rome, Jr. (Son). According to a court order entered September 19, 1986, Anthony's visitation with Son was limited to every other Tuesday evening and the daylight hours of every other weekend. The order specifically disallowed overnight visitation. On October 19, 1986, Anthony picked up Son at his mother's home at 9 a.m. for their usual visitation. Anthony was to return Son to his mother's home by 6 p.m. that evening, but failed to do so. Cathy then contacted the authorities. A custody hearing had been scheduled to take place approximately one week after the abduction of Son by Anthony. Anthony did not return for that hearing. In mid-January of 1987, Anthony's whereabouts was discovered by the FBI. Anthony was arrested in or near Cleveland, Ohio, and Cathy was notified that she could travel to Cleveland to pick up Son, which she did.

At trial, Anthony raised the issue of justification/necessity on three occasions. At a pretrial conference, in an off-the-record narrative, Anthony informed the court that he planned to introduce evidence concerning such defense. The trial court ruled such evidence (that Anthony had removed

---

* SDCL 22–19–9 provides:

Any parent who takes, entices away or keeps his unmarried minor child from the custody or visitation of the other parent, or any other person having lawful custody or right of visitation, in violation of a custody or visitation determination entitled to enforcement by the courts of this state, without prior consent is guilty of a Class 1 misdemeanor. A subsequent violation of this section is a Class 6 felony.

SDCL 22–19–10 provides:

Any parent who violates § 22–19–9 and causes the unmarried minor child taken, enticed or kept from his lawful custodian to be removed from the state is guilty of a Class 5 felony.

Son from the state to protect him from child abuse) was not admissible at the guilt phase of trial, but would be considered at the punishment phase of trial. At trial, and specifically to protect his record, Anthony questioned Cathy regarding her knowledge of any physical abuse Son might have received. The trial court ruled such testimony was irrelevant and immaterial. Such questions were meant to elicit the fact that Anthony was acting out of a good motive to protect the best interests of his son and were not relevant to the question of guilt or innocence. Again, at trial, the court allowed Anthony to make an offer of proof, which offer was denied. The trial court again characterized such evidence as going to motive and was, therefore, not an appropriate defense. Anthony argues justification/necessity is a proper defense and refusal of the trial court to allow presentation of such a defense denied him a fair trial and is grounds for reversal. State, on the other hand, seems to argue that even if justification/necessity is a proper defense, it is not applicable to this appellant. Therefore, Anthony was not prejudiced by the denial.

The defense of justification/necessity is grounded in SDCL 22–5–1 which provides:

A person may not be convicted of a crime based upon conduct in which he engaged because of the use or threatened use of unlawful force upon him or upon another person, which force or threatened use thereof a reasonable person in his situation would have been lawfully unable to resist.

We have said the above statute recognizes "that the defense of justification may negate criminal *purpose*." *State v. Miller*, 313 N.W.2d 460, 461 (S.D.1981). (Emphasis added.) This is not to say that the crime committed, for which justification is sought, must be a specific intent crime. It is to say, however, that the conduct engaged in may not rise to the level of a crime. In *Miller*, the appellant was charged with escape, a general intent crime. The same is true of the crime of child-napping.

State contends that on determining whether to submit the justification defense to a jury, one of the factors the court will look to is whether there were alternate means to alleviate the threatened greater harm. As State points out, this custody matter was set for hearing within one week of the time Anthony spirited Son away from his mother. Anthony did not appear at the scheduled custody hearing. He made no attempt to report his allegations to authorities after attaining a position of safety. Finally, he eluded the authorities from state to state, until he was apprehended in Ohio.

We point out that the issue on appeal is not whether the evidence supported submission of the justification/necessity defense to the jury in this case, as is focused on in Chief Justice Wuest's dissent; but rather, whether the trial court erred in preventing Anthony from presenting any evidence of this defense. We determine the trial court committed reversible error in prohibiting the introduction of *any* evidence relating to Anthony's justification/necessity defense. *State v. Goff*, 79 S.D. 138, 109 N.W.2d 256 (1961) (refusal of trial judge to permit motorist, charged with failing to stop after being involved in an accident, to explain his leaving the scene, constituted prejudicial error).

Since this case must be reversed on the first issue, we find it unnecessary to comment on Anthony's other arguments.

Reversed and remanded.

HENDERSON, SABERS and MILLER, JJ., concur.

WUEST, C.J., dissents.

WUEST, Chief Justice (dissenting).

I dissent. Although the State must carry the burden of disproving the necessity defense beyond a reasonable doubt, the defendant has the burden of generating a fact question on the defense. *State v. Walton*, 311 N.W.2d 113, 115 (Iowa 1981); *State v. Reese*, 272 N.W.2d 863, 867 (Iowa 1978). *See State v. Miller*, 313 N.W.2d 460, 462 (S.D.1981). If all the requirements of the defense are not addressed in

the defendant's evidence, the trial court is not obligated to submit that issue to the trier of fact. *See United States v. Jackson,* 838 F.2d 301, 302 (8th Cir.1988); *Walton,* 311 N.W.2d at 115 (*citing United States v. Campbell,* 609 F.2d 922, 924 (8th Cir.1979), *cert. denied,* 445 U.S. 918, 100 S.Ct. 1282, 63 L.Ed.2d 604 (1980)). Appellant's evidence in this case not only fails to generate a fact question on necessity, but also affirmatively discloses that the defense was not available to him.

"The rationale of the [necessity] defense ... lies in the social advantage gained when the defendant chooses the lesser of two evils and thus, by bringing about the lesser harm, avoids the greater harm." W. LaFave & A. Scott, *Handbook on Criminal Law* § 50, at 385 (1972). In analyzing cases where the defendant was not personally at fault in creating the situation calling for the necessity to choose between two evils, the following factors should be taken into consideration: (1) the harm avoided, (2) the harm done, (3) the defendant's intention to avoid the greater harm, (4) the relative value of the harm avoided and the harm done, and (5) optional courses of action and the imminence of harm. *Id.* at 385–88.

The situations in which the necessity defense applies are limited and depend on the lack of a legal alternative to committing a criminal act. Generally, the defense of necessity does not apply except in an emergency—when the threatened harm is immediate or the threatened disaster is imminent. In *People v. Patrick,* 126 Cal.App.3d 952, 179 Cal.Rptr 276 (1981), the court stated:

> ... [A]lthough the exact confines of the necessity defense remain clouded, a well-established central element involves the emergency nature of the situation, i.e., the imminence of the greater harm which the illegal act seeks to prevent. ... The commission of a crime cannot be countenanced where there exists the possibility of some alternate means to alleviate the threatened greater harm.

*Id.* 179 Cal.Rptr. at 281–82 (citations omitted). The defense, therefore, excuses criminal conduct only if such conduct is justified by a need to avoid imminent peril and there is insufficient time to notify the proper authorities. *Walton,* 311 N.W.2d at 115; *Reese,* 272 N.W.2d at 867–68; *State v. Johnson,* 289 Minn. 196, 201, 183 N.W.2d 541, 544 (1971). *See also* W. LaFave & A. Scott, *supra* at 388. *See generally Wharton's Criminal Law* § 88 (C. Torcia 14th ed. 1978).

Additionally, it is not sufficient to show that the defendant, in committing an illegal act, merely believed he was avoiding a harm or an evil. The defendant must show that the belief was objectively reasonable. Good intentions alone will not excuse a crime. " 'The question that must be resolved [in the necessity defense] involves looking to all the choices available to the defendant and then determining whether the act ... was the *only viable and reasonable choice available.*' " *People v. Beach,* 194 Cal.App.3d 955, 972, 240 Cal. Rptr. 50, 59 (1987) (emphasis in original) (*quoting People v. Lovercamp,* 43 Cal. App.3d 823, 827, 118 Cal.Rptr. 110, 112 (1974).

In the present case, the pendency of the child custody hearing constituted appellant's legal alternative to child stealing. This hearing was scheduled to occur within a week's time of when appellant took Anthony Jr. When the date came for that hearing, appellant had already fled the state with the child. He did not appear at the scheduled custody hearing, nor did he make any attempt to obtain legal custody of the child.

Furthermore, there is no indication in the record that appellant made any attempts to report this matter to the proper authorities after attaining a position of safety from the alleged peril. Instead, he deliberately evaded the authorities for over three months until he was apprehended by the Federal Bureau of Investigation in Cleveland, Ohio. During that time, he was able to elude the authorities in at least three states. In light of these circumstances, it cannot be said that the trial court abused its discretion in disallowing evidence relating to appellant's necessity defense.