STATE of Iowa, Appellee,

v.

Lloyd Dean BONJOUR, Appellant.

No. 03–0309.

Supreme Court of Iowa.

Feb. 11, 2005.

Rehearing Denied April 12, 2005.

Linda Del Gallo, State Appellate Defender, and Theresa R. Wilson, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Richard J. Bennett, Assistant Attorney General, and Marilyn J. Dettmer, County Attorney, for appellee.

LARSON, Justice.

The only issue in this appeal is whether we will recognize a common-law defense of medical necessity in a marijuana manufac-turing case. The district court denied the defense, and we affirm.

## I.  *Facts and Prior Proceedings.*

When Floyd County sheriff's deputies went to Lloyd Bonjour's home to serve warrants on him, they observed marijuana plants and bagged marijuana. Bonjour was initially charged with multiple offenses, but by agreement with the State the charges were reduced to one: manufacture of marijuana in violation of Iowa Code section 124.401 (1999).

Prior to trial, Bonjour filed a notice of his intent to rely on a defense of medical necessity. The State resisted by filing a motion in limine, and Judge Stephen Carroll held an evidentiary hearing on it. At the hearing, Bonjour testified that he is in his sixties and suffers from Acquired Immune Deficiency Syndrome (AIDS). His physician, Dr. Jeffery Meier, assistant professor in internal medicine at the University of Iowa, testified that because of the AIDS virus Bonjour must take a variety of toxic medications. This toxic combination causes side effects such as poor appetite, nausea, neuropathy, and diarrhea.

Dr. Meier originally treated these side effects by prescribing Marinol, which is a synthetic version of THC (the active substance in marijuana). Dr. Meier stated that Bonjour demonstrated some signs of improvement while on Marinol, but his symptoms were better controlled when he began using marijuana. Dr. Meier conceded that his only basis for this assessment was the information he received from Bonjour about what he had been taking. Nevertheless, Dr. Meier concluded that "one could say that marijuana might have been lifesaving in this particular case." The effectiveness of marijuana in the treatment of AIDS is not an issue in this appeal.

Judge Carroll granted the State's motion in limine and barred Bonjour from presenting his medical-necessity defense. The case proceeded to a bench trial before Judge Bryan McKinley, who found Bonjour guilty. On appeal Bonjour's sole issue is the denial of his medical-necessity defense.

## II. *The Medical–Necessity Defense.*

We have considered necessity defenses in other contexts. *E.g., State v. Walton,* 311 N.W.2d 113, 115 (Iowa 1981); *State v. Ward,* 170 Iowa 185, 188–89, 152 N.W. 501, 502 (1915). In *Walton,* which involved a defendant's illegal carrying of a firearm for self-protection, we rejected the defense. In *Ward,* which involved a defendant shooting a deer to protect his crop, we allowed it. We have never decided a medical-necessity case.

We have said the rationale for the necessity defense in general lies in the "defendant being required to choose the lesser of two evils and thus avoiding a greater harm by bringing about a lesser harm." *Walton,* 311 N.W.2d at 115. As one commentator has stated, "the law ought to promote the achievement of higher values at the expense of lesser values, and sometimes the greater good for society will be accomplished by violating the literal language of the criminal law." 2 Wayne R. LaFave, *Substantive Criminal Law* § 10.1 (2d ed.2003) [hereinafter LaFave].

However,

[t]he defense of necessity is available only in situations wherein the legislature has not itself, in its criminal statute, made a determination of values. The mere fact that the statute under which defendant is charged has *some* exceptions from liability not covering the situation at hand does not inevitably mean there has been a legislative determination contrary to defendant's position.

But if the legislature *has* made a determination on this matter one way or another, then its decision governs.

*Id.* (footnotes omitted).

As the New Jersey Supreme Court noted:

The [necessity] defense is based on public policy. In essence it reflects a determination that if, in defining the offense, the legislature had foreseen the circumstances faced by the defendant, it would have created an exception. It would have balanced the competing values and chosen the lesser evil. Obviously, then, the defense is available at common law only when the legislature has not foreseen the circumstances encountered by a defendant. If it has in fact anticipated the choice of evils and determined the balance to be struck between the competing values, defendants and courts alike are precluded from reassessing those values to determine whether certain conduct is justified.

*State v. Tate,* 102 N.J. 64, 505 A.2d 941, 946 (1986).

Similarly, we look to our substance-abuse statutes to determine whether the legislature has already struck a balance between the two harms presented (i.e., the harm of manufacturing marijuana versus the harm of denying AIDS victims the right to use it) or left the issue open. If it has left the issue open, there may be room for recognizing a common-law necessity defense. *See id.;* LaFave § 10.1.

Iowa Code chapter 124 restricts the use of controlled substances and divides them into five "schedules." Marijuana is listed as a Schedule I controlled substance. Iowa Code § 124.204(4)(*m*). Iowa Code section 124.203 states that a Schedule I substance "[h]as a high potential for abuse" and "[h]as no accepted medical use in treatment in the United States" or

"lacks accepted safety for use in treatment under medical supervision."

Despite the legislature's conclusion that marijuana has no allowable medicinal use, it left the door open for possible medical uses in the future. Under section 124.204(4)(*m*), marijuana is a Schedule I controlled substance "except as otherwise provided by rules of the board of pharmacy examiners for medicinal purposes."

The legislature has recognized that marijuana may have medical value. This is apparent from Iowa Code section 124.206(7)(*a*), which provides marijuana may become a Schedule II substance (which is one that "has currently accepted medical use in treatment in the United States, or currently accepted medical use with severe restrictions," Iowa Code § 124.205(2)). As to marijuana, the "severe restriction" is that its use must be for medicinal purposes "*pursuant to rules of the board of pharmacy examiners.*" *Id.* § 124.206(7)(*a*) (emphasis added). The defendant does not contend, and we do not believe, that the Board of Pharmacy Examiners has adopted any rules that would make marijuana use legal.

These statutes show that our legislature has foreseen the potential medical uses for marijuana but has deferred on the issue until the Board of Pharmacy Examiners has acted. The legislature has, therefore, made the kind of "determination of values" in this debate—enforcement of the marijuana ban versus its potential medical value—that effectively forecloses our recognition of a common-law necessity defense. *See Tate,* 505 A.2d at 946; LaFave § 10.1.

Part of the problem in recognizing a medical-necessity defense is defining the parameters to place on it. Medical-necessity defenses have been sought in connection with treatment of a wide variety of conditions. In addition to AIDS, these have included complications of diabetes

(*People v. Mower,* 28 Cal.4th 457, 122 Cal. Rptr.2d 326, 49 P.3d 1067, 1071 (2002)); epilepsy (*State v. Hanson,* 468 N.W.2d 77, 77–78 (Minn.Ct.App.1991)); emotional anxiety caused by head injury (*State v. Williams,* 93 Wash.App. 340, 968 P.2d 26, 28 (1998)); effects of chemotherapy (*Seeley v. State,* 132 Wash.2d 776, 940 P.2d 604, 606–07 (1997)); spasticity due to quadriplegia (*Tate,* 505 A.2d at 942); glaucoma (*State v. Bachman,* 61 Haw. 71, 595 P.2d 287, 288 (Haw.1979)); rheumatoid arthritis (*State v. Hastings,* 118 Idaho 854, 801 P.2d 563, 564 (Idaho 1990)); and multiple sclerosis (*State v. Poling,* 207 W.Va.299, 531 S.E.2d 678, 680–81 (2000)). There are, no doubt, many other maladies for which marijuana treatment may be sought.

Although some states have adopted the defense of medical necessity by statute, Iowa has not. And most jurisdictions to consider the issue under common law have rejected it. *See, e.g., United States v. Oakland Cannabis Buyers' Coop.,* 532 U.S. 483, 491–93, 121 S.Ct. 1711, 1718–19, 149 L.Ed.2d 722, 732–34 (2001); *State v. Cramer,* 174 Ariz. 522, 851 P.2d 147, 149 (Ariz.Ct.App.1992); *People v. Kratovil,* 351 Ill.App.3d 1023, 286 Ill.Dec. 868, 815 N.E.2d 78, 90–92 (2004); *Hanson,* 468 N.W.2d at 78–79; *Tate,* 505 A.2d at 946; *Williams,* 968 P.2d at 30; *Poling,* 531 S.E.2d at 684–85. *But see Jenks v. State,* 582 So.2d 676, 679 (Fla.Dist.Ct.App.1991).

Our conclusion that the legislature did not leave the door open to a common-law necessity defense might draw into question our deer-shooting case, *State v. Ward,* previously mentioned. In that case, the legislature had considered the possibility of a need to shoot nuisance deer, in violation of the general statute, by providing a remedy:

When it shall become necessary in the opinion of the state game warden or his deputies to kill or capture any deer now

running at large within this state, it shall be done under the authority and direction of the state fish and game warden. . . .

*Ward,* 170 Iowa at 190, 152 N.W. at 502. In *Ward* the defendant did not enlist the aid of the state game warden but rather shot the deer himself. *Id.* at 187, 152 N.W. at 501. Despite the fact the legislature had weighed the possible need to dispose of nuisance deer and provided a means to do it other than by self-help, we allowed the defendant to assert a necessity defense. *Id.* at 189, 152 N.W. at 502.

While our disposition of the present case seems to be inconsistent with *Ward,* we believe the medical use of marijuana is qualitatively different from the legal issue in *Ward.* Use of marijuana is a public-policy issue best suited for the legislature because it is driven by legal, moral, philosophical, and medical concerns that are ill-suited for resolution by this court. This is especially true in view of the fact the legislature has deferred the initial decision on the matter to the Board of Pharmacy Examiners.

As the law stands now, manufacturing marijuana is prohibited and marijuana has no recognized medicinal value. The issue in this case is not whether the legislature has "acted to preclude the defense by a clear and deliberate choice," *Commw. v. Hutchins,* 410 Mass. 726, 575 N.E.2d 741, 744 (1991). It has not. What it *has* done, however, is to clearly and deliberately decide what the procedure shall be for making that determination. That procedure is to defer to the Board of Pharmacy Examiners, which is far better equipped than this court—and the legislature, for that matter—to make critical decisions regarding the medical effectiveness of marijuana use and the conditions, if any, it may be used to treat. The board has not done so,

and we, by legislative directive, must wait until it does.

While an appeal is made here for us to recognize this defense on humanitarian grounds, we may do so only under established principles of law. In other contexts, we have been asked to ameliorate harshness in legislative enactments and have declined. In *Schultze v. Landmark Hotel Corp.,* 463 N.W.2d 47 (Iowa 1990), for example, the plaintiff asked us to engraft a discovery rule on the statute of limitations under Iowa Code section 614.1(9). We said the

> plaintiff raises an equitable concern. He argues that the discovery rule should apply to section 614.1(9) because of the "extreme hardship" and "strained and impractical result" it works on survivors. A few courts have allowed equitable concerns and potential hardship to plaintiffs to influence their decision applying the discovery rule in the face of a statute expressly providing that an action must be commenced within a specified period of time after death. We find, however, this line of cases to be unsound authority because they are based on judicial discretion used to *implement notions of fairness rather than giving effect to the priorities that the legislature has set forth in an express statutory provision.*

*Schultze,* 463 N.W.2d at 51 (emphasis added) (citations omitted); *accord Schlote v. Dawson,* 676 N.W.2d 187, 193 (Iowa 2004).

In view of the legislature's measured plan for studying this issue, it would be inappropriate now for us to leapfrog the legislature and the Board of Pharmacy Examiners by simply recognizing the medicinal value, and the legality, of marijuana use. Informed medical decisions need to be made regarding whether in fact marijuana has the claimed effects. An even more significant issue is how far such a defense should be extended. Resolution of

these issues must await further study by the pharmacy board and the legislature.

We believe the trial court correctly denied the proffered medical-necessity defense, and we therefore affirm.

**AFFIRMED.**

All justices concur except TERNUS, J., who concurs in result only, and WIGGINS, J., and LAVORATO, C.J., who dissent.

WIGGINS, Justice (dissenting).

I respectfully dissent.

Bonjour is a man in his sixties living with AIDS. Bonjour's doctor told the district court he must take a cocktail of toxic drugs to prolong his life. His doctor also told the district court this cocktail of toxic drugs has serious side effects, which include nausea, vomiting, poor appetite, diarrhea, and neuropathy. These side effects have not allowed Bonjour to stay on the strict regimen of his AIDS' drugs, which is critical for these drugs to work. Bonjour's doctor attempted to relieve the side effects of the drugs by other medication, including Marinol, a synthetic form of marijuana, used to control nausea and vomiting. These medications were ineffective in controlling these side effects, so Bonjour started to use marijuana in his cooking to alleviate the side effects. The marijuana controlled the side effects more effectively than the Marinol and allowed Bonjour to maintain his strict regimen of drugs. Bonjour's health has improved with his use of marijuana.

The State chose to charge Bonjour with possession of marijuana. The only issue before this court is whether under these facts the common-law medical necessity defense is available to a defendant charged with possession of marijuana.

I agree with the majority the common-law defense of necessity is only available to Bonjour if "the Legislature has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue." *Commonwealth v. Hutchins*, 410 Mass. 726, 575 N.E.2d 741, 744 (1991). I disagree, however, with the majority's conclusion that the legislature's enactment of Iowa's Controlled Substances Act [1] foreclosed the recognition of the common-law necessity defense when it involves the medical use of marijuana.

In 1971, the legislature repealed the Uniform Narcotic Drug Act and enacted the Uniform Controlled Substances Act. Unif. Controlled Substances Act, prefatory note, 9 U.L.A. 10 (1994). While Iowa's enactment of the Uniform Controlled Substances Act is a substantial adoption of the major provisions of the uniform act, Iowa's act contains some provisions not contained in the uniform act. *Id.* One such provision at variance with the uniform act occurred by amendment in 1979.

Iowa's act, as originally enacted, classified marijuana as a Schedule I controlled substance without exception. Iowa Code § 204.204(4)(*j*) (1973). A Schedule I substance "has no accepted medical use in treatment in the United States; or lacks accepted safety for use in treatment under medical supervision." *Id.* § 204.203(2). The original enactment was consistent with the uniform act. In 1979, the legislature amended Iowa's act classifying marijuana as a Schedule I substance "except as otherwise provided by the rules of the board of pharmacy examiners for medical purposes." *Id.* § 204.204(4)(*j*) (1981). In the same amendment, the legislature added a new provision to the list of Schedule I substances providing, "[t]his section does not apply to marijuana ... when utilized for medical purposes pursuant to rules of

---

**1.** Iowa's Controlled Substances Act is found   in Iowa Code chapter 124.

the state board of pharmacy examiners." *Id.* § 204.204(6).

In the session laws adopting the 1979 amendments, the legislature also provided funding for the board of pharmacy examiners to establish "a research program for the medicinal use of marijuana." 1979 Iowa Acts ch. 9, § 3. In 1979, the board of pharmacy examiners adopted rules establishing a research program investigating the medical use of marijuana. Iowa Admin. Code r. 620—12.1 (1979). The rules clearly recognized the legislature did not preclude the medical use of marijuana in Iowa's Controlled Substances Act by stating: "Nothing in these rules will preclude the use of any available dosage forms of marijuana or tetrahydrocannabinols." *Id.* The rules defined "marijuana" as the legislature defined it in Iowa's Controlled Substances Act. *Id.* r. 620—12.2(3).

In 1987, the board of pharmacy examiners rescinded its rules establishing a research program into the medical use of marijuana because the legislature amended Iowa's Controlled Substances Act classifying marijuana as a Schedule II substance.[2] Feb. 25, 1987 Iowa Admin. Bull. at 1444 (ARC 7383). The provision amending the Code classifying marijuana as a Schedule II substance provided in relevant part: "[m]arijuana is deemed to be a Schedule II substance when used for medicinal purposes pursuant to rules of the board of pharmacy examiners." Iowa Code § 204.206(7) (1987). A Schedule II substance "has currently accepted medical use in treatment in the United States, or currently accepted medical use with severe restrictions." *Id.* § 204.205(2). Millions of people use Schedule II substances each day to relieve their symptoms. Other

Schedule II substances include pain medications with codeine (Tylenol with codeine), oxycodone-based pain medications (Percocet), fentynal-based pain medications (Duragesic), and amphetamines (Adderall and Dexedrine).

In 1990, the legislature amended this section of the Code one more time. The legislature continued to classify marijuana as a Schedule II substance, when used for medical purposes pursuant to rules of the board of pharmacy examiners. *Id.* § 204.206(7) (1991). It provided:

> Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation which contains any quantity of the following substances [is a Schedule II substance]:
>
> *a.* Marijuana when used for medicinal purposes pursuant to rules of the board of pharmacy examiners.
>
> . . . .
>
> *c.* Nabilone.[3]

*Id.* The 1990 amendment continues to be the law today. *See* Iowa Code § 124.206(7) (2003).

This legislative history and the classification of marijuana as a Schedule II substance indicate the legislature has not precluded the use of the common-law necessity defense by a *clear and deliberate choice* regarding the values surrounding the medical use of marijuana. The legislature has accepted the fact that marijuana does have legitimate medical uses. This acceptance leaves the issue open as to whether the common-law medical necessity defense is available to a defendant charged with possession of marijuana. If the legislature wanted to preclude the

---

2. By statute, the board of pharmacy examiners has the duty to recommend revisions to the schedules of controlled substances. Iowa Code §§ 204.201(1); 204.205 (1987).

3. Nabilone is a synthetic derivative of the chemicals found in marijuana.

common-law necessity defense by a clear and deliberate choice regarding the values surrounding the medical use of marijuana, it would have repealed the sections of the Code recognizing that marijuana has legitimate medical uses.

The majority believes the legislature's inclusion of the language, "pursuant to rules of the board of pharmacy examiners," indicates a clear and deliberate choice by the legislature to preclude the common-law defense until the board acts. I disagree. At best, the legislature's inclusion of this language indicates an ambiguous choice by the legislature regarding the values surrounding the medical use of marijuana.

Once it is determined that the legislature has not precluded the common-law necessity defense to a charge of unlawful possession of marijuana, no one can dispute that the common-law necessity defense exists in Iowa. *State v. Reese,* 272 N.W.2d 863, 866 (Iowa 1978). This court first recognized the common-law defense in 1915. *State v. Ward,* 170 Iowa 185, 191, 152 N.W. 501, 503 (1915). In *Ward,* the State charged the defendant with unlawfully killing a deer. 170 Iowa at 187, 152 N.W. at 501–02. The defendant contended he killed the deer because several deer had regularly destroyed his crops. *Id.* at 188, 152 N.W. at 502. The statute under which the defendant was charged made no exception to the killing of a deer in defense of one's property. *Id.* at 189–90, 152 N.W. at 502. The statute only allowed the state game warden or his deputies to kill or capture any deer running at large "when it became necessary in the opinion of the state game warden or his deputies." *Id.* at 190, 152 N.W. at 502. In allowing the defendant to use and eventually prevail on the common-law necessity defense, this court stated:

> [T]he right of defense of person and property is a constitutional right (article I, § 1, const. Iowa), and is *recognized in the construction of all statutes.* If in this case it was reasonably necessary for the defendant to kill the deer in question in order to prevent substantial injury to his property, such fact, we have no doubt would afford justification for the killing.

*Id.* at 189, 152 N.W. at 502 (emphasis added). Article I, section 1 of the Iowa Constitution provides:

> All men and women are, by nature, free and equal, and have certain inalienable rights—among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing and obtaining safety and happiness.

Iowa Const. art. I, § 1.

If this court recognizes article I, section 1's inalienable rights in the context of the necessity defense, the right of a person to defend his or her life and pursue and obtain safety and happiness is just as important, if not more important, than the right to defend one's crops from hungry deer. If we are willing to allow a farmer to realize the full value of his crops by allowing him to kill a foraging deer, when the law authorized only a game warden or his deputy to kill that deer, we should allow an individual to seek relief from the agonizing symptoms caused by an incurable disease that will eventually lead to death, even though the board of pharmacy examiners has not enacted rules regarding the medical use of marijuana.

The failure of the board of pharmacy examiners to act is not an excuse for this court to refuse to recognize the defense when the legislature clearly recognizes there are legitimate medical uses for marijuana. We do not have to wait for the legislature or the board to negotiate the

political minefield regarding the medical use of marijuana. As long as the legislature has not precluded the defense by a clear and deliberate choice, this court has an obligation to allow a defendant to use a necessity defense if the facts support such a defense. Otherwise, this court could always cite to a legislature's ambiguous pronouncement on a subject as grounds for rejecting the defense.

For these reasons, I would recognize the common-law necessity defense when a defendant uses marijuana for medical purposes. *See Jenks v. State,* 582 So.2d 676, 679 (Fla.Dist.Ct.App.1991) (holding statute listing marijuana as a Schedule I substance does not preclude the defense of medical necessity for a defendant who allegedly used marijuana to treat nausea in connection with his AIDS' treatment); *State v. Bachman,* 61 Haw. 71, 595 P.2d 287, 288 (Haw.1979) (holding a medical necessity defense could be asserted to a marijuana possession charge with competent medical testimony); *State v. Hastings,* 118 Idaho 854, 801 P.2d 563, 565 (Idaho 1990) (holding defendant who was charged with possession of marijuana was entitled to present evidence relating to the common-law defense of necessity in connection with her claim that she suffered from rheumatoid arthritis and used marijuana to control pain and muscle spasms). In order for a defendant to use the defense, I would require the defendant to show by competent medical evidence that (1) the defendant is faced with a serious and imminent danger, not one which is debatable or speculative; (2) the defendant can reasonably expect that the use of marijuana for medical purposes will be effective to abate the danger; and (3) there are no legal conventional medical alternatives which will be effective in abating the danger. I would limit the defense to possession charges.

Bonjour presented competent medical evidence from a board-certified physician that the use of marijuana to treat Bonjour's symptoms is effective, safe, and without significant side effects. Under the record made at the motion in limine hearing, Bonjour satisfied the elements necessary to put the defense of medical necessity at issue. Therefore, I believe Bonjour should be entitled to use this defense to the charge of unlawful possession of marijuana.

LAVORATO, C.J., joins this dissent.