**IN THE COURT OF APPEALS OF IOWA**

No. 14-0271
Filed March 11, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**RONALD JESSE YOUNG,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Winneshiek County, David F. Staudt, Judge.


        Criminal defendant appeals his conviction and sentence for operating while intoxicated, third offense.  **AFFIRMED.**


        Mark C. Meyer, Cedar Rapids, for appellant.

        Thomas J. Miller, Attorney General, Heather R. Quick, Assistant Attorney General, Andrew VanderMaaten, County Attorney, and Barrett Gipp, Assistant County Attorney, for appellee.


        Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**MCDONALD, J.**

Ronald Young appeals his conviction and sentence for operating while intoxicated, third offense, in violation of Iowa Code section 321J.2 (2011). Young contends the district court improperly refused to submit the defense of necessity to the jury. Young also contends he was denied his right to self-representation.

I.

Young raises two separate arguments regarding the district court's declination of his request to instruct the jury on the necessity defense. First, he contends the district court erred in refusing to instruct the jury on his requested defense. Second, he contends the district court's refusal to instruct the jury on the defense violated his due process right to present a defense. We conclude Young failed to preserve error on his due process claim. At no point during the conference on jury instructions or in posttrial proceedings did Young raise a due process claim to the district court. When a party has failed to advance an argument in the district court, error has not been preserved, and we will not consider the issue on appeal. *See State v. Tidwell*, No. 13-0180, 2013 WL 6405367, at *2 (Iowa Ct. App. Dec. 5, 2013) (discussing reasons for error preservation rules); *see also State v. Biddle*, 652 N.W.2d 191, 203 (Iowa 2002) ("The rule of error preservation applies with equal strength to constitutional issues."); *State v. Kinkead*, 570 N.W.2d 97, 102 (Iowa 1997) (discussing error preservation). We thus limit our discussion to Young's claim the district court erroneously refused to give the requested instruction.

We review jury instruction issues for correction of errors of law. *See State v. Newell*, 710 N.W.2d 6, 29 (Iowa 2009). A trial court must instruct on a defendant's theory of defense provided the defendant makes a timely request, the requested theory of defense instruction is supported by substantial evidence, and the requested instruction is a correct statement of the law. *See State v. Johnson*, 534 N.W.2d 118, 124 (Iowa Ct. App. 1995). In this case, the district court determined the requested instruction was not supported by the evidence. On appeal, we determine only whether the trial court correctly determined the requested instruction did not have evidentiary support. *See State v. Hartsfield*, 681 N.W.2d 626, 631 (Iowa 2004).

The necessity defense is protean; potentially applicable in a variety of circumstances to account for the exigencies of daily life. At common law, the necessity defense was available when "a man has his choice of two evils set before him, and being under a necessity of choosing one, he chuses the least pernicious of the two." 4 William Blackstone, Commentaries *31-32. Perhaps the best known case discussing the contour and application of the necessity defense is *United States v. Holmes*, 26 F. Cas. 360 (C.C.E.D. Pa. 1842). In that case, the ship *William Brown* struck an iceberg in the dark of night some 250 miles off the coast of Newfoundland. The captain, some crew, and some passengers managed to escape the sinking vessel, crowding into two lifeboats, one of which contained a significant leak discovered only after being lowered into the water. For almost a full day, the passengers of the leaking lifeboat alternated turns rowing and bailing in freezing rain. The defendant, a sailor and crewman,

at the first mate's instruction, tossed overboard some passengers from the sinking lifeboat so the remainder could have a better chance of survival. Improbably, the remainder survived, being rescued the following day by a passing ship, *The Crescent*. The defendant was tried for manslaughter, and he asserted the defense of necessity. *Id.* The court explained, as relevant here, the defense as follows:

> It is one thing to give a favourable interpretation to evidence in order to mitigate an offence. It is a different thing, when we are asked, not to extenuate, but to justify, the act. In the former case, as I have said, our decision may in some degree be swayed by feelings of humanity; while, in the latter, it is the law of necessity alone which can disarm the vindicatory justice of the country. Where, indeed, a case does arise, embraced by this 'law of necessity,' the penal laws pass over such case in silence; for law is made to meet but the ordinary exigencies of life. *But the case does not become 'a case of necessity,' unless all ordinary means of self preservation have been exhausted. The peril must be instant, overwhelming, leaving no alternative but to lose our own life, or to take the life of another person.*

*Id.* at 366 (emphasis added). The court ultimately rejected the application of the defense because the ship's crew owed a duty to the passengers to sacrifice themselves before the passengers. *See id.* at 367 ("The sailor is bound, as before, to undergo whatever hazard is necessary to preserve the boat and the passengers. Should the emergency become so extreme as to call for the sacrifice of life, there can be no reason why the law does not still remain the same."). Nonetheless, the court's emphasis on the imminent, inevitable, and inescapable nature of the harm necessary to support the defense is instructive for our purposes.

Iowa has adopted the necessity defense. Our supreme court first addressed the issue in *State v. Ward*, 152 N.W. 501, 503 (Iowa 1915). In *Ward*, the court had to determine "whether th[e] defendant ha[d] a right to kill deer that [was] injuring and destroying his corn" when the law prohibited killing deer. *See* 152 N.W.2d at 501. The court concluded the defense was available, explaining that at the time the deer was killed "he was actually engaged in the destruction of the defendant's property." *Id.* at 502. The court also explained the defense might be necessary because "the deer was one of great voracity. He was capable of doing, and was threatening to do, great injury to defendant's property." *Id.* The court concluded if it was "reasonably necessary to kill the deer in question in order to prevent substantial injury to his property, such fact, . . . would afford justification for the killing." *Id.* While the case of the voracious deer is not as compelling as the sinking lifeboat, the *Ward* court's emphasis on the nature of the harm necessary to support the defense is instructive.

Our courts have extended the availability of the defense to justify violations of the law necessary to avoid harm caused by human forces. *See State v. Reese*, 272 N.W.2d 863, 866 (Iowa 1976). Despite this extension, a survey of our case law demonstrates the defense, properly understood, should be available in only very limited circumstances. *See, e.g., State v. Bonjour*, 694 N.W.2d 511, 514-15 (Iowa 2005) (holding the defense unavailable to manufacturing marijuana for medical purposes); *Planned Parenthood of Mid–Iowa v. Maki*, 478 N.W.2d 637, 640 (Iowa 1991) (holding the defense not

available to excuse criminal activity by those who disagree with the policies of the government); *Reese,* 272 N.W.2d at 865 (ruling that defense of necessity could be available to a charge of escape); *City of Des Moines v. Webster*, No. 13-1802, 2014 WL 7343445, at *7 (Iowa Ct. App Dec. 24, 2014) (finding there was insufficient evidence to establish defense of necessity for trespassing homeless).

Under the modern formulation, we generally look to five different factors to determine if the defense applies: "1) the harm avoided, 2) the harm done, 3) the defendant's intention to avoid greater harm, 4) the relative value of the harm avoided and the harm done, and 5) optional courses of actions and the imminence of disaster." *State v. Walton*, 311 N.W.2d 113, 115 (Iowa 1981). The harm must be "present, imminent, and impending, and of such a nature as to induce well grounded apprehension of death or serious bodily harm if the act is not done." *Id.* Further, the defendant's violation of the law must be necessary, in the strict sense of the word, as explained in *Holmes*. *See Holmes*, 26 F. Cas. at 366. That is, there must be no other option available to the defendant. *See id.*

Turning to the facts of this case, the evidence showed Young was drinking at a bar with Samantha Coonradt. They left the bar together and went to the grocery store to purchase more alcohol. Upon leaving the store, Young saw Robert Coonradt across the street. Robert had assaulted Young a month prior because Robert believed Young was having an affair with Robert's wife, Samantha. Young heard Robert either yelling or talking and, fearing he might be assaulted, got into his truck and drove away with Samantha in the cab. A witness noticed the truck had a flat tire and the rim was sparking. The witness

called the police, who sent an officer to find Young. The officer found Young at a nearby gas station putting air into the deflated truck tire. Young failed sobriety tests, was arrested, and charged with the instant offense. It is not disputed that Young was operating his vehicle while intoxicated—driving from the bar to the grocery store and then the grocery store to the gas station. Young contends, however, that he had no choice but to drive from the grocery store while under the influence to avoid being assaulted by Robert.

We conclude the district court did not err in declining to give the requested instruction. The district court declined to give the instruction because the harm was not imminent and because Young had options to avoid harm. We agree in both respects. The evidence showed only that Robert was across the street. The harm was not so immediate that Young had no other option but to drive away intoxicated. Samantha, who was a passenger in Young's vehicle, could have driven them away. Young could have locked himself in his vehicle. He also could have reentered the grocery store and asked for assistance. He could have fled on foot. He could have obtained assistance from a passerby. He availed himself of none of these lawful alternatives. *See Walton*, 311 N.W.2d at 115 (holding that court did not err in refusing to give instruction where the evidence did not show there was no options "to avoid the possibility of harm"). "If all the requirements of the defense are not addressed in the defendant's evidence, trial court is not obligated to submit the issue to the jury." *Id.* Accordingly, the district court did not err in refusing to give the requested instruction.

II.

In a state criminal trial, a defendant has a Sixth and Fourteenth Amendment right under the United States Constitution to self-representation. *Faretta v. California*, 422 U.S. 806, 821 (1975). Before the right attaches, the defendant must voluntarily elect to proceed without counsel by "knowingly and intelligently" waiving his Sixth Amendment right to counsel. *Id.* at 835. Before a trial court accepts the request, the court must make the defendant "aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* (quoting *Adams v. United States*, 317 U.S. 269, 279 (1942)). Alleged violations of the Sixth Amendment are reviewed de novo. *State v. Rater*, 568 N.W.2d 655, 657 (Iowa 1997).

Young claims the district court interfered with his right of self-representation when the district court denied his day-of-trial request to proceed without counsel and his day-of-trial request to continue trial so he could prepare his defense. We conclude Young failed to invoke his right to self-representation. To invoke the right to self-representation, the "defendant must knowingly, intelligently, and unequivocally waive his right to counsel and state his intentions to represent himself." *Id.* at 658 (quoting *Hamilton v. Groose*, 28 F.3d 849, 861 (8th Cir. 1994), *cert. denied*, 513 U.S. 1085 (1995)). The record reflects that Young requested he be allowed to fire his trial counsel and have additional time to obtain different counsel. When the court denied Young's request for additional

time, Young stated that he wanted to proceed with his trial counsel. There was no "clear and unequivocal" request to proceed without representation, there was only a request to fire counsel and a request for more time. *Rater*, 568 N.W.2d at 568.

We also conclude the district court's denial of Young's request for continuance did not work a denial of his right to self-representation. Upon a request to fire or substitute appointed counsel, the trial court must examine to see if sufficient cause exists and if a continuance is warranted. *See State v. Martin*, 608 N.W.2d 445, 449 (Iowa 2000). A trial court does not need to grant a continuance if there are no specific "good and compelling causes." *State v. Clark*, 814 N.W.2d 551, 562 (Iowa 2012). After determining that a continuance for substitution of counsel is not warranted, the trial court should insist that the defendant choose between current counsel or proceed pro se. *Martin*, 608 N.W.2d at 449. This is proper because it forces the defendant to choose between two constitutional options. *Id.* The district court here determined that there was no good and compelling cause to continue the case. The district court then forced the defendant to choose between proceeding with counsel or without counsel, and the defendant chose to proceed with counsel. There was no denial of his right to self-representation. *See Clark*, 814 N.W.2d at 562.

Finally, we also conclude the court did not interfere with Young's rights because Young only requested to fire counsel as a delay tactic. The trial court is permitted to distinguish between a manipulative effort to delay proceedings "and a sincere desire to dispense with the benefits of counsel." *State v. Wehr*, 852

N.W.2d 495, 501 (Iowa Ct. App. 2014). On the morning of trial, Young asked to fire his counsel and continue trial. This was merely the final of numerous procedural shenanigans Young invoked to delay trial in a simple case. The trial information was filed on October 23, 2012. Young asserted his right to self-representation at arraignment, which the district court granted. Young requested a continuance of trial. The continuance was granted and trial was moved to March. Young then obtained private counsel, and the trial was continued to June. After that, Young filed two more motions to continue, which were granted, pushing trial back to November 2013. Right before trial, Young then filed two pro se motions on November 12, 2013: "Demand to Fire Counsel" and "Demand for Dismissal or Stay to Secure Counsel and Investigated." These are the motions supporting his *Faretta* claim. Given the procedural background, the district court found Young's argument that he needed new counsel not credible and found it "to be a stall tactic to avoid going to trial." The right to self-representation does not exist "to be used as a tactic for delay, for disruption, for distortion of the system, or for manipulation of the trial process. *Id.*

III.

For the foregoing reasons, we affirm the defendant's conviction and sentence.

**AFFIRMED.**