# IN THE COURT OF APPEALS OF IOWA

No. 16-1169
Filed May 3, 2017

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**TROY LEE MURE JR.,**
　　　　Defendant-Appellant.

_____

Appeal from the Iowa District Court for Polk County, Paul D. Scott, Judge.

Troy Lee Mure Jr. appeals from his conviction following a bench trial for homicide by vehicle. **AFFIRMED.**

Gerald B. Feuerhelm of Feuerhelm Law Office, P.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Thomas J. Ogden, Assistant Attorney General, for appellee State.

Considered by Danilson, C.J., and Potterfield and Bower, JJ.

**DANILSON, Chief Judge.**

Troy Lee Mure Jr. appeals from his conviction following a bench trial for homicide by vehicle, in violation of Iowa Code section 707.6A(2)(a) (2015).  Mure contends the trial court erred in holding Mure did not satisfy the requirements of the necessity defense, asserts his actions were justified by self-defense, and argues his reckless driving was not the proximate cause of the death of Scalicity Boyd.  Because we conclude the trial court's findings are supported by substantial evidence, we affirm.

**I. Background Facts & Proceedings.**

On the morning of November 23, 2015, Mure was driving his girlfriend, Scalicity Boyd, in her vehicle in the Drake University neighborhood of Des Moines.  As Mure and Boyd traveled southbound on 34th Street, Mure noticed a silver Cadillac pull onto the street following them.  Mure turned right onto University Avenue and then proceeded to the middle turn lane to turn left onto 35th Street.  Mure testified he then saw the Cadillac run the stop sign and turn right onto University Avenue.  Mure stated he watched in the rear view mirror as the Cadillac swerved around to the side of Boyd's vehicle and an occupant of the vehicle rolled down the back window and displayed a gun.

Mure had heard he was suspected by other members in the community of being involved in a nightclub shooting that occurred on November 8, 2015, and he had been receiving threats as a result.  Mure testified he therefore was fearful of the Cadillac and believed, in displaying the weapon, the occupants of the vehicle were threatening his and Boyd's lives.

In an attempt to flee from the Cadillac, Mure turned hastily onto 35th street and drove away at a high speed. The Cadillac followed Mure, also travelling at a high speed. Witnesses testified they saw Mure's vehicle and the pursuing vehicle traveling southbound on 35th Street, both vehicles driving extremely fast, passing other vehicles, and running a stop sign.

Mure stated it was his intent to get to a grocery store located at 35th Street and Ingersoll Avenue because there was often a police officer at that location. However, before Mure got to Ingersoll Avenue, he lost control of Boyd's vehicle. The vehicle skidded into a utility pole, snapping the pole in half; hit an embankment; and came to a stop after wrapping around a tree. Boyd was thrown from the front passenger seat of the vehicle and killed. Boyd had more than one serious injury that could have potentially caused her death.

Mure testified the reason he lost control of the vehicle was because the Cadillac tapped the bumper of Boyd's car. However, Officer Ryan King—an officer trained in traffic-accident investigation—testified if Boyd's vehicle was hit by the Cadillac, there would likely be "dents, paint transfer, scrapes, smudge marks, something that would show that the vehicle had been in contact" with the Cadillac. Although the vehicle had light marks on the passenger side of the bumper, Officer King testified he ruled out the possibility of another car hitting Boyd's car as a cause of the accident. Officer King stated he reached that conclusion, "Due to the lack of damage in the location that Mr. Mure stated, based on the physical evidence of the scene, and the direction that the vehicle skidded was not consistent with the damage that was on the bumper of the vehicle."

State Trooper Kirk Lundgren was tasked with obtaining and reviewing the information from Boyd's vehicle's black box[1] following the accident. Trooper Lundgren testified the information from the black box indicated that in the five seconds prior to the crash Mure was driving between eighty-five and eighty-nine miles per hour and the vehicle's brakes were never applied.

At trial, Mure raised the necessity defense, arguing he had no other option than to drive recklessly to escape the Cadillac. The trial court found Mure generated a fact question on the necessity defense, but the State disproved necessity beyond a reasonable doubt. Mure now appeals.

**II. Standard of Review.**

Mure asserts his appeal is based on the trial court's misapplication of the legal test for necessity. However, Mure's arguments on appeal challenge the trial court's findings upon application of the proper legal test. Thus, as the State asserts, we consider Mure's claims as challenges to the sufficiency of the evidence. Our review is for correction of errors at law. *State v. Sinclair*, 622 N.W.2d 772, 777 (Iowa Ct. App. 2000).

"We review a trial court's findings in a jury-waived case as we would a jury verdict: If the verdict is supported by substantial evidence, we will affirm." *State v. Weaver*, 608 N.W.2d 797, 803 (Iowa 2000). In reviewing bench-trial cases, we apply

> the usual rules for reviewing the sufficiency of the evidence, namely, that the evidence is viewed in the light most favorable to the State; that all of the evidence must be considered, and not just that which supports the verdict; that the verdict must be upheld if

---

[1] The term "black box" refers to the vehicle's crash data retrieval system that records information surrounding the deployment of airbags.

supported by substantial evidence; and that substantial evidence means such evidence as could convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt.

*State v. McFadden*, 320 N.W.2d 608, 614 (Iowa 1982).

**III. Analysis.**

*A. Necessity.* Mure challenges the trial court's conclusion that the necessity defense does not apply to the facts of this case.[2]

"The rationale of the necessity defense lies in defendant being required to choose the lesser of two evils and thus avoiding a greater harm by bringing about a lesser harm." *State v. Walton*, 311 N.W.2d 113, 115 (Iowa 1981). "The necessity defense does not apply except in emergency situations where the threatened harm is immediate and the threatened disaster imminent. The defendant must be stripped of options by which he or she might avoid both evils." *Id.* In determining if the necessity defense applies, factors to be considered include: "(1) the harm avoided, (2) the harm done, (3) the defendant's intention to avoid the greater harm, (4) the relative value of the harm avoided and the harm done, and (5) optional courses of action and the imminence of disaster." *Id.* Once the defendant generates a fact question as to the necessity defense, the State "carr[ies] the burden to disprove the necessity defense beyond a reasonable doubt." *Id.* "[A] survey of our case law demonstrates the defense [of necessity], properly understood, should be available in only very limited

---

[2] The trial court found, and it is undisputed, the elements of Iowa Code section 707.6A(2)(a) were established: Mure unintentionally caused the death of Boyd by "[d]riving a motor vehicle in a reckless manner with willful or wanton disregard for the safety of persons or property, in violation of section 321.277."

circumstances." *State v. Young*, No. 14-0271, 2015 WL 1055070, at *2 (Iowa Ct. App. Mar. 11, 2015).

Mure argues the trial court improperly applied the law of necessity in reaching its findings. However, the trial court considered the proper factors and determined:

> The harm in this case was initially present, imminent, impending, and of such a nature as to induce well-grounded apprehension of death or serious bodily harm if the act is not done. However, once Mure turned onto 35th street, that harm dissipated. The Cadillac was no longer pulling up next to him, it was now behind him. No shots were fired. It was simply not necessary to drive recklessly to avoid the harm.
>
> The State proved beyond a reasonable doubt that Mure was not operating under the belief that his action of reckless driving was necessary. The jail phone call supports this finding. Mure made statements that "he wanted to slow the car down," but "Scalicity told me to keep going," and that he was "pulling up getting ready to stop at stop signs," but "she told me to go." . . . These facts establish beyond a reasonable doubt that Mure did not believe he had to drive recklessly to get away. . . .
>
> The State has proven the severity of the harm done beyond a reasonable doubt. The severity cannot be overstated. A life was lost. . . . [Mure's] reckless driving was not avoiding a greater harm, it in fact created a greater harm.
>
> . . . .
>
> The State has proven beyond a reasonable doubt that Mure had several options, other than reckless driving, to avoid both evils: he could have called police, he could have driven in a reasonable manner, or he could have escaped on foot.
>
> . . . .
>
> The State has proven beyond a reasonable doubt that alternatives existed which would have allowed Mure to avoid the harm without violating the law and without driving recklessly. Mure's claim of necessity as a defense fails.

We conclude substantial evidence supports the trial court's findings. Thus, even if Mure has established the threshold requirements for the defense, the State met its burden to disprove the defense beyond a reasonable doubt.

While we agree with the trial court that Mure's initial fear was well-grounded, the record reflects the potential and actual harm caused by Mure's reckless driving was significant. Boyd lost her life. Mure did not simply drive away. Rather, Mure put other individuals at risk by driving almost ninety miles per hour on a residential street with a thirty-mile-per-hour speed limit, passing cars at extreme speeds with inadequate view of oncoming traffic, and speeding through a stop sign. The record supports the trial court's conclusions:

> The State has proven the severity of the harm done beyond a reasonable doubt. The severity cannot be overstated. A life was lost. The State has produced evidence proving beyond a reasonable doubt that Mure did not intend to avoid the greater harm. Again, once he turned the corner onto 35th Street the harm dissipated and was no longer present, imminent, and impending, and of such a nature as to induce well-ground apprehension of death or serious bodily harm if the act is not done. His reckless driving was not avoiding a greater harm, it in fact created a creater harm.

It was reasonably foreseeable that driving at very high speeds in a residential district was likely to cause the death of someone—a pedestrian, Mure, or his passenger, and thus, Mure's violation of the law by reckless driving was not a lesser harm.

We also find substantial evidence supports the trial court's finding that there were other options available to Mure. Mure testified that although he had a cell phone in the vehicle, he did not attempt to call 911 for help. Also, the State established it was not necessary for Mure to drive nearly ninety miles an hour to escape the perceived harm. We note, as did the trial court, the weapon was not pointed at Mure and no shots were ever fired. Although the Cadillac did pursue Mure at an equally extreme speed, it no longer attempted to pull alongside

Boyd's vehicle once Mure had turned onto 35th Street, a narrow roadway. Mure's own testimony reveals he believed it was not necessary to drive at such a high speed:

> Q. So whether you are going [eighty] miles an hour or [forty] miles an hour, that car is going to be right behind you either way, isn't it?  A. Probably.
> Q. Okay.  You could have driven slower and kept him behind you; correct?  A. Yes.
> Q. Now, you told [Officer] Ryan King that Scalicity was the one to tell you to go.  You also told him that at your interview, correct?  A. Correct.
> Q. You told him you wanted to stop at stop signs; correct? A. At least slow down for them.
> Q. But that's when you said you wanted to slow down for stop signs?  A. Yes.
> Q. Okay.  And you told him you wanted to slow down in general, didn't you?  A. Correct.

Thus, the evidence supports the trial court's finding there were other options available to Mure to avoid the harm, namely, to drive in a more reasonably safe manner.   In order to utilize the necessity defense, "the defendant's violation of the law must be necessary, in the strict sense of the word . . .  That is, there must be no other option available to the defendant."  *Id.* at *3.

In sum, although the perceived harm that Mure was attempting to avoid was great, the trial court found the harm diminished when the Cadillac was behind Boyd's vehicle and no shots were fired.  Based on the harm that could have come to other individuals driving or walking on 35th Street, and the harm that did come to Boyd, along with the other optional courses of action available to Mure as established by substantial evidence in the record, we conclude the trial court did not err in finding the necessity defense does not serve as a defense for Mure's criminal act.

*B. Justification Defense.* Mure also contends his actions were justified by self-defense. However, the trial court did not rule on the issue of general self-defense, and Mure did not seek a ruling on the issue. *See State v. Opperman*, 826 N.W.2d 131, 133 (Iowa Ct. App. 2012) ("For an issue to be preserved the objections of the error-preservation rules must be accomplished: challenges must be raised at the earliest possible point, opposing counsel must have notice and the opportunity to be heard, and the district court must have the opportunity to consider and pronounce a ruling on the issue."). Therefore, error was not preserved, and we need not consider this claim.

Even if error was preserved, the justification defense would not be available to Mure. An individual is precluded from using the justification defense when "[a]n alternative course of action was available." *State v. Shanahan*, 712 N.W.2d 121, 134 (Iowa 2006). As noted above, Mure had other optional courses of action available at the time of the incident.

*C. Proximate Cause.* Last, Mure asserts the trial court erred in finding his reckless driving was the proximate cause of Boyd's death. The trial court, citing *State v. Garcia*, 616 N.W.2d 594, 598 (Iowa 2000), noted "Mure can be only relieved of criminal responsibility for Ms. Boyd's death if her death 'can be attributed solely to the' actions of the pursuing vehicle." The trial court then held "the evidence does not support the claim that Mure was hit, tapped, or rammed by the Cadillac."

We find substantial evidence supports the trial court's finding. Officer King testified any contact between the Cadillac and Boyd's vehicle would mostly likely have left markings, paint transfer, or denting on the bumper of Boyd's vehicle—

none of which were present. Although there were light marks on the passenger side of the bumper, Officer King explained, in order to spin the direction that the vehicle spun, it would had to have been hit on the driver's side of the vehicle. Thus, Officer King ruled out contact with another vehicle as a cause for the accident and Boyd's death. Based on this evidence, the trial court did not err in concluding Mure's reckless driving was the proximate cause of Boyd's death.

**IV. Conclusion.**

We find substantial evidence supports the trial court's findings and Mure's resulting conviction for homicide by vehicle. We therefore affirm.

**AFFIRMED.**